PLUMBER'S LOCAL 458 HOLIDAY VACATION
FUND, Plumber's Local 458 Pension Fund, Plumber's
Local 458 Health Fund, Plumber's Local 458 Industry
Fund, Plumber's Local 458 Union Office Assessment
Fund, Plaintiffs-Respondents,

v.

HOWARD IMMEL, INC., Defendant-Appellant,

APPLETON PAPERS, INC., and Augie's Corporation,
Defendants.

Court of Appeals

*No. 89-0092. Submitted on briefs May 23, 1989.—Decided June
6, 1989.*

(Also reported in 445 N.W.2d 43.)

For defendant-appellant there were briefs by *Paul D. Lawent,* Madison.

For plaintiffs-respondents there was a brief by *Bernard O. Westler* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  Howard Immel, Inc., appeals a judgment in favor of Plumber's Local 458 Holiday Vacation Fund, Pension Fund, Health Fund, Industry Fund, and Union Office Assessment Fund for $21,430.56 plus costs. Immel argues that the funds may not recover under the construction lien law, ch. 779, Stats., for unpaid employee benefit contributions against property owners and prime contractors with whom the funds have no agreement. Alternatively, Immel argues that if the funds can use the construction lien law against it, that law is preempted by the Employment Retirement Security Income Act of 1974 (ERISA). 29 U.S.C.A. sec. 1001 et seq. (West 1985). Because unpaid benefit contributions may be collected under the construction lien law and ERISA does not preempt state law in this area, we affirm.

The relevant facts are as follows. Appleton Papers, Inc., contracted with Immel to complete a construction

project. To eliminate all lien rights, this contract contained a provision making Immel responsible for payment of all claims for the labor performed with respect to the project. Immel subcontracted the plumbing work out to Augie's Corporation. Immel did not require a performance or payment bond from Augie's.

Augie's had a collective bargaining agreement with Local 458, which represented eight of its employees. One of the provisions of this agreement provided that Augie's make contributions to the funds on behalf of these employees. The covered employees worked 4,143 hours on the project. Based on this figure, Augie's was to pay the funds $21,430.56 in contributions, however, these payments were never made.

The funds brought a claim against Augie's and obtained a judgment in federal court. Augie's is judgment proof, and the funds turned to Wisconsin's construction lien law in an attempt to collect the unpaid judgment. Augie's employees assigned any lien rights they might have in the unpaid contributions to the funds. To perfect their lien claims as assignees, the funds followed the procedure outlined in sec. 779.036(1) through (3), Stats. As a result, Appleton Papers retained its final payment to Immel, an amount sufficient to pay the funds' claim.

The funds then brought an action to determine their right to a construction lien and to the money being held by Appleton Papers. The trial court concluded that the funds had a valid construction lien and that because ch. 779 has only a tenuous, remote, and peripheral effect on employee benefit plans, it is not preempted by ERISA.

Immel first argues that the only basis for a construction lien under ch. 779 is unpaid hourly wages and that a lien cannot be obtained for unpaid employee benefit contributions. Immel also contends that because the claim

for unpaid contributions belongs to the funds, not the eight employees, the employees had nothing to assign to funds under sec. 779.04, Stats. Whether the funds have an enforceable construction lien requires the application of a legal standard to a set of facts. This is a question of law that we review independently of the trial court's determination. *Wachniak v. Estate of Frank,* 140 Wis. 2d 429, 431, 410 N.W.2d 621, 625 (Ct. App. 1987).

Section 779.036(1) provides:

> In any case in which an improvement is constructed or to be constructed pursuant to a contract and payment bond under s. 779.035, any person furnishing labor . . . to any prime contractor or subcontractor shall have a lien on the money or other payment due or to become due the prime contractor or subcontractor therefor, if the lienor, before payment is made to the prime contractor or subcontractor, gives written notice of the lienor's claim . . ..

This language does not expressly provide that only claims for wages may provide the basis for a construction lien; it simply refers to persons furnishing labor.

■■■

Wisconsin's construction lien law is remedial in nature and should be liberally construed "to give effect to the legislative intent of protecting the claims of tradesmen, laborers and materialmen for work and materials supplied." *Wes Podany Const. Co. v. Nowicki,* 120 Wis. 2d 319, 324, 354 N.W.2d 755, 758 (Ct. App. 1984). The contributions were part of the compensation agreed to in the collective bargaining agreement. Were we to construe the lien law so narrowly as to defeat a laborer's right to use it to enforce contributions agreed to by contract, we would be undercutting the very purpose for which the statute was enacted. *See United States v.*

*Carter,* 353 U.S. 210, 216–17 (1957). Given the statutory language and purpose, we refuse to restrict ch. 779's application to claims for unpaid hourly wages.

Furthermore, even if one accepts the argument that ch. 779 applies only to claims for unpaid wages, we conclude that the term "wages" includes contracted-for employee benefit contributions. While ch. 779 does not define wages, it has been defined in other statutes to include *all* forms of compensation, including hourly wages, pension, welfare, and vacation benefits. For example, sec. 128.17(1)(d), Stats. (order for distribution out of debtor's estate), defines wages to include pension, welfare, and vacation benefits due to workmen. Section 109.01(3), Stats. (wage payments, claims, and collections), defines wages to include remuneration to an employee, including salaries, holiday and vacation pay, severance payment, "and any other similar advantages agreed upon between the employer and the employe." Section 103.49(1)(d), Stats. (wage rate to be paid on municipal or state work projects), defines the prevailing wage rate as the hourly basic rate plus the hourly contribution for health and welfare benefits, vacation benefits, pension benefits and any other economic benefit, whether paid directly or indirectly. Under the minimum wage law, wages include any compensation for labor. Sec. 104.01(8), Stats. Thus, "wages" have generally been defined to include not only the hourly rate paid for labor, but the total remuneration for labor, including contributions for vacation, pension, and health insurance benefits.[1] We conclude that the construction lien statute encompasses not only the hourly rate of pay but the payments required under the union contract to the vacation, pension, health, and industry funds.

---

[1]*See Affetto v. TRW, Inc.,* 691 F.2d 357, 358–59 (7th Cir. 1982).

Immel next argues that ERISA preempts the construction lien law when it is used to collect unpaid employee benefit contributions. Congress' purpose in enacting ERISA was to

> protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

*Pilot Life Ins. Co. v. Dedeaux,* 107 S. Ct. 1549, 1551 (1987) (quoting 29 U.S.C.A. 1001(b) (1985)). ERISA's provisions preempt any and all state laws as they may now or hereafter relate to any employe benefit plan. 29 U.S.C.A. sec. 1144(a) (West 1985). A state law " 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97 (1983). Preemption is not limited to state laws specifically designed to affect employee benefit plans. *Id.* at 98.

Immel argues that ERISA preempts any attempt to use remedies provided by state law to collect obligations where an employee benefit plan is involved. We disagree. The United States Supreme Court has held that Congress did not intend to prohibit the use of state law garnishment procedures to execute judgments against ERISA benefit plans. *Mackey v. Lanier Collections Agency & Serv., Inc.,* 108 S. Ct. 2182, 2186 (1988). If plans may use state law to collect on a judgment against a plan, certainly ERISA does not preempt the plan's

ability to use those procedures to collect a judgment on behalf of the plan.

The only ERISA provision related to the collection of unpaid contributions is found in 29 U.S.C.A. sec. 1145, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

This statute is enforced through the civil enforcement provisions found in 29 U.S.C.A. sec. 1132. However, ERISA does not specify how a judgment obtained under these provisions is to be collected. We conclude that ERISA does not preempt ERISA-regulated funds from using state law available to general creditors to collect money judgments.

We refuse to rely on the holding in *Carpenters So. Cal. Admin. Corp. v. El Capitan Serv. Co.,* 243 Cal. Rptr. 132 (Cal. App. 1988).[2] California had adopted a mechanic's lien law expressly authorizing employee benefit funds to obtain a lien on real property for the amount of unpaid benefit contributions required by a collective bargaining agreement. The California Court of Appeals struck down this law, concluding that ERISA provided the exclusive remedy regarding unpaid plan contributions.

We find *El Capitan* to be inapposite. There is a substantial difference between the California statute found to have been preempted by ERISA and Wisconsin's construction lien statute. The California statute

---

[2]The California Supreme Court has granted the petition for review in this case. *Carpenters,* 753 P.2d 1 (1988).

239

applied only to the collection of unpaid ERISA accounts. The lien created by the California statute specifically referred to ERISA obligations and created a remedy for the collection of ERISA obligations that did not exist under the federal act. In contrast, Wisconsin's construction lien law is a general statute without any specific reference to ERISA obligations. It is a remedy available to a certain class of creditors that transcends ERISA obligations and concerns. While one may readily understand court decisions holding that the collection of ERISA obligations may not be directed by state law, a decision holding that no general creditor's remedies may be utilized to collect judgments held by ERISA-regulated plans would be unfathomable. This holding would often leave funds without the means to enforce judgments.

Essentially, Immel argues that no state law providing the means to collect on a judgment is available where ERISA obligations are involved because of the doctrine of preemption. While ERISA preempts states from interfering with such collection efforts, *see Mackey,* 108 S. Ct. at 2185, it does not preempt states from creating general creditors' rights that may be utilized to effect collections of obligations by all creditors, including a creditor possessing an ERISA claim that has been reduced to a judgment. For these reasons, we conclude that *El Capitan* is not dispositive of the issue before this court.

Based upon our conclusion that ERISA has not preempted general creditors' rights created by Wisconsin law, we conclude that Plumber's Local 458 was entitled to use Wisconsin's construction lien statute to collect the

unpaid contributions due under the master labor agreement between Augie's and Plumber's Local 458.

*By the Court.*—Judgment affirmed.