918 P.2d 1143

**HAWAI'I LABORERS' TRUST FUNDS, (Health & Welfare Trust Fund by James L. Tom, Lito Alcantra, John Murchison, Harry Ushijima, Mel Cremer, Larry Cadiz, Manuel Oliveira, and Benjamin Saguibo; Pension Trust Fund by Richard Hirano, Charles Miyata, Ernie Bello, Randall Ching, Wilton Ching, Kathy Yoshikami, Robert Sueda, Norman Janicki, Jr., Larry Cadiz, Mel Cremer, Norman Janicki, Sr., Benjamin Saguibo, Marilyn Tanaka, and Larry Sadaba; Training Trust Fund by Stanley Wada,**

---

Gilbert Ho, Richard Honjiyo, John Murchison, Manuel Oliveira, Alvis McCann, Benjamin Saguibo, and Ryan Tohara; Vacation & Holiday Trust Fund by Robert Sueda, Tamateru Kodama, Leonard Song, Salvador Ambrocio, Ismael Solis and Mitchell Kalilimoku; Annuity Trust Fund by Richard Honjiyo, Walter Arakaki, Tamateru Kodama, Robert Sueda, Salvador Ambrocio, Rick Pagatpatan, Mitchell Kalilimoku, and Clayton Saguibo), Lienors–Appellants,

v.

MAUI PRINCE HOTEL, a Hawai'i corporation, and Makena Resort Corp., formerly known as Seibu Hawai'i, Inc., a Hawai'i corporation, Owner/Developer–Appellees; and Greenscape, Ltd., a California corporation, Contractor–Appellee; and Hunnicutt International, Inc., a Hawai'i corporation, Contractor–Appellee.

HAWAI'I LABORERS' TRUST FUNDS, (Health & Welfare Trust Fund by James L. Tom, Lito Alcantra, John Murchison, Harry Ushijima, Mel Cremer, Larry Cadiz, Manuel Oliveira, and Benjamin Saguibo; Pension Trust Fund by Richard Hirano, Charles Miyata, Ernie Bello, Randall Ching, Wilton Ching, Kathy Yoshikami, Robert Sueda, Norman Janicki, Jr., Larry Cadiz, Mel Cremer, Norman Janicki, Sr., Benjamin Saguibo, Marilyn Tanaka, and Larry Sadaba; Training Trust Fund by Stanley Wada, Gilbert Ho, Richard Honjiyo, John Murchison, Manuel Oliveira, Alvis McCann, Benjamin Saguibo, and Ryan Tohara; Vacation & Holiday Trust Fund by Robert Sueda, Tamateru Kodama, Leonard Song, Salvador Ambrocio, Ismael Solis and Mitchell Kalilimoku; Annuity Trust Fund by Richard Honjiyo, Walter Arakaki, Tamateru Kodama, Robert Sueda, Salvador Ambrocio, Rick Pagatpatan, Mitchell Kalilimoku, and Clayton Saguibo), Lienors–Appellants,

v.

WAILEA RESORT COMPANY, LTD., a Hawai'i corporation, Owner–Appellee; and Greenscape, Ltd., a California corporation, Contractor–Appellee; and Hunnicutt International, Inc., a Hawai'i corporation, Contractor–Appellee.

HAWAI'I LABORERS' TRUST FUNDS, (Health & Welfare Trust Fund by James L. Tom, Harry Ushijima, Lito Alcantra, John Murchison, Mel Cremer, Benjamin Saguibo, Manuel Oliveira, and Larry Cadiz; Pension Trust Fund by Richard Hirano, Stanley Wada, Ernie Bello, Randall Ching, Wilton Ching, Robert Sueda, Louanne Kam, Norman Janicki, Jr., Benjamin Saguibo, Mel Cremer, Norman Janicki, Sr., Larry Cadiz, Marilyn Tanaka, and Larry Sadaba; Training Trust Fund by Richard Honjiyo, Ryan Y. Wada, Gilbert Ho, John Murchison, Benjamin Saguibo, Alvis McCann, Manuel Oliveira, and Ryan Tohara; Vacation & Holiday Trust Fund by Tamateru Kodama, Robert Sueda, Leonard Song, Salvador Ambrocio, Benjamin Saguibo and Ismael Solis; Annuity Trust Fund by Walter Arakaki, Richard Honjiyo, Tamateru Kodama, Robert Sueda, Melvin Kalama, Salvador Ambrocio, Clayton Saguibo, and Rick Pagatpatan), Plaintiffs–Appellants,

v.

WAILEA RESORT COMPANY, LTD., a Hawai'i corporation, Defendants–Appellees; and John Does, 1–10, Defendants.

HAWAI'I LABORERS' TRUST FUNDS, (Health & Welfare Trust Fund by James L. Tom, Harry Ushijima, Lito Alcantra, John Murchison, Mel Cremer, Benjamin Saguibo, Manuel Oliveira, and Larry Cadiz; Pension Trust Fund by Richard Hirano, Stanley Wada, Ernie Bello,

Randall Ching, Wilton Ching, Robert Sueda, Louanne Kam, Norman Janicki, Jr., Benjamin Saguibo, Mel Cremer, Norman Janicki, Sr., Larry Cadiz, Marilyn Tanaka, and Larry Sadaba; Training Trust Fund by Richard Honjiyo, Ryan Y. Wada, Gilbert Ho, John Murchison, Benjamin Saguibo, Alvis McCann, Manuel Oliveira, and Ryan Tohara; Vacation & Holiday Trust Fund by Tamateru Kodama, Robert Sueda, Leonard Song, Salvador Ambrocio, Benjamin Saguibo, and Ismael Solis; Annuity Trust Fund by Walter Arakaki, Richard Honjiyo, Tamateru Kodama, Robert Sueda, Melvin Kalama, Salvador Ambrocio, Clayton Saguibo, and Rick Pagatpatan), Plaintiffs–Appellants,

v.

MAUI PRINCE HOTEL CORP., a Hawai'i corporation, and Makena Resort Corporation, a Hawai'i corporation, Defendants–Appellees; and John Does 1–10, Defendants.

Nos. 18266 * to 18269.

Supreme Court of Hawai'i.

June 18, 1996.

Pablo P. Quiban (Reynaldo D. Graulty with him on the briefs of Graulty, Evangelista & Quiban), Honolulu, for lienors-appellants and plaintiffs-appellants Hawai'i Laborers' Trust Fund.

Susan Oki Mollway of Cades Schutte Fleming & Wright, on the briefs, Honolulu,

---

* By order dated September 6, 1994, this court consolidated Nos. 18266, 18267, 18268, and 18269. Nos. 18266 and 18269 are companion mechanics' lien and foreclosure actions by the Hawai'i Laborers' Trust Funds against the Maui Prince Hotel and Makena Resort Corporation. Likewise, Nos. 18267 and 18268 are companion mechanics' lien and foreclosure actions by the Hawai'i Laborers' Trust Funds against Wailea Resort Company, Ltd.

for owner/developer-appellees Maui Prince Hotel and Makena Resort Corp., contractor-appellee Greenscape, Ltd., and defendants-appellees Wailea Resort Company, Ltd.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

We are called upon to determine whether the Hawai'i State Mechanic's and Material-man's Lien Law,[1] in collecting delinquent trust fund contributions, is preempted by the Employee Retirement Income Security Act of 1974 (ERISA).[2] Specifically, we are faced with the question of whether Hawai'i Revised Statutes (HRS) § 507–42 (1993)[3] may be used to effectuate the judgment of a federal district court, in order to recover delinquent ERISA contributions due the Hawai'i Labor-ers' Trust Fund (HLTF) on behalf of labor-ers who performed labor and improvements on the subject lien property. We hold that HRS § 507–42 is not preempted by ERISA and, accordingly, HRS § 507–42 may be used by trust funds to collect delinquent trust fund contributions.

## I. BACKGROUND

This action arises out of the construction of the Makena and Wailea golf courses, which are owned by defendants-appellees Maui Prince Hotel Corporation and Wailea Resort Company, Ltd. (collectively, "Owners") respectively. For both projects, defendant-appellee Greenscape, Ltd., ("General Contractor") was the general contractor; and on both projects, General Contractor subcontracted with defendant-appellee Hunnicutt International, Inc. ("Subcontractor") to provide landscape and construction work for the golf courses. On both of these projects, labor was furnished by members of the Labor-ers' International Union of North America, Local 368, AFL–CIO ("Union"). Subcontractor contracted with Union for work to be performed on each of the projects. As part of their agreement, Subcontractor executed and delivered to Union certain labor agreements covering landscape and construction laborers in the State of Hawai'i. Under these agreements, Subcontractor promised to make certain contributions to the HLTF for each hour of work performed by the laborers.

The dispute in this action arose when Subcontractor, who paid the laborers for their work, failed to make the agreed upon contributions to the laborers' ERISA trust fund as required by the labor agreements.[4]

Upon completion of the projects, HLTF instituted civil actions against Subcontractor

---

1. The Hawai'i Mechanic's and Materialman's Lien Law is the lineal descendant of a measure adopted by the Legislative Assembly of the Kingdom of Hawai'i, Chapter XXI of the Laws of Hawai'i, 1888. Though the statute has been extensively amended, particularly in its procedural aspects, the essential purpose "to properly protect Mechanics and Materialmen who have furnished both time and material for others" has not been altered.

   *Hawai'i Carpenters' Trust Funds v. Aloe*, 63 Haw. 566, 571, 633 P.2d 1106, 1109 (1981).

2. ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a) (1988).

3. HRS § 507–42 (1993) provides:

   **When allowed; lessees, etc.** Any person or association of persons furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof or if no price is agreed upon by the contracting parties, for fair and reasonable value of all labor and materials covered by their contract, express or implied.

   Where the terms of a lease, contract of sale, or instrument creating a life tenancy require the improvement of the real property, the interest of the lessor, vendor, or remainderman in the improvement and the land upon which the same is situated shall likewise be subject to the lien, and any provision for forfeiture or other penalty against the lessee, vendee, or life tenant in case of the filing of a mechanic's or materialman's lien or actions to enforce the same, shall not affect the rights of lienors.

4. HLTF alleges that Subcontractor had entered into a written agreement with Union and had "promised to contribute and pay employee benefit contributions once per month to the Trust Funds for each hour of work performed by Hunnicutt International, Inc.'s employees covered by the [collective bargaining agreement], together with liquidated damages, interest, attorney's fees, costs and disbursements," but that Subcontractor had failed to make these contributions.

in the United States District Court for the District of Hawai'i (Case No. 92–00590 DAE and Civil No. 92–00463 HMF), to recover the unpaid trust fund contributions. On October 14, 1992, a default judgment was entered in favor of HLTF and against Subcontractor, in the amount of $39,076.56, for Subcontractor's failure to answer or otherwise plead.

Upon receiving this favorable judgment from the federal district court, HLTF proceeded to enforce the judgment against Owners in the Second Circuit Court of the State of Hawai'i. Although Owners were not parties to the labor agreement between HLTF and Subcontractor, HLTF asserted that, under HRS § 507–42 (1993),[5] Owners were liable for Subcontractor's failure to pay the trust fund contributions because labor and improvements were furnished on their property.

HLTF's action to enforce the federal court judgment in the circuit court consisted of two separate applications for mechanic's and materialman's liens in accordance with the provisions of HRS § 507–42. The lien actions were sought by HLTF to collect on the federal district court's judgment by attaching liens on Owners' real properties and improvements including both golf course projects. On April 21, 1993, an order directing a lien to attach was entered against both projects. On June 16, 1993, HLTF, asserting its right to foreclose on the liens that it had obtained, filed two separate actions to foreclose its mechanic's and materialman's liens.

Although they are not ERISA parties,[6] Owners filed separate motions to dismiss or, in the alternative, for summary judgment, on ERISA preemption grounds, to defeat the foreclosure action. Owners argued that HRS § 507–42 "related to" employee benefit plans, and was therefore preempted by ERISA. Concluding that the actions were preempted by ERISA, the circuit court granted Owners' motions.

The circuit court also considered and granted a motion made by HLTF to strike the affidavit of Gerald T. Johnson, who supported Owners' motion for summary judgment. In its order, the court concluded that the affidavit did not conform to Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) because the attached exhibits were not properly authenticated.

HLTF thereafter timely appealed. On September 6, 1994, all four appeals (Supreme Court Nos. 18266, 18267, 18268, and 18269) were consolidated into the present case.

## II. *STANDARD OF REVIEW*

We review the circuit court's grant of dismissal for want of subject matter jurisdiction[7] according to the standard set forth in *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 842 P.2d 634 (1992), *aff'd* — U.S. —, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Reviewing an order granting a motion to dismiss on the ground that a claim was preempted by the Railway Labor Act, 45 U.S.C. §§ 151–188 (1988), this court announced that:

> [a] trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo. McCarthy v. U.S.,* 850 F.2d 558, 560 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *see also Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990). Moreover, we adopt the view of the Ninth Circuit Court of Appeals in *Love v. United*

---

5. *See supra* note 4.

6. ERISA relationships usually include: the trustees of the trust fund; the employer; and the employees or beneficiaries of the trust fund. Accordingly, the ERISA parties in this action are: HLTF, as trustees of the trust fund; Subcontractor, as the employer; and the members of HLTF who performed labor and improvements on Owners' property as the beneficiaries of the trust fund. Owners, however, are not ERISA parties because they were not a party or privy to the labor agreements.

7. The circuit court in granting the motions to dismiss, or, in the alternative, for a summary judgment, did not indicate whether the case was dismissed or decided on summary judgment grounds. We do not believe that the disposition was based on the latter because the underlying affidavit supporting the summary judgment was stricken by the circuit court. Based on the record, it is apparent that the circuit court's granting of dismissal was based on lack of subject matter jurisdiction.

*States*, 871 F.2d 1488 (9th Cir.1989), *opinion amended on other grounds and superseded by Love v. United States*, 915 F.2d 1242 (9th Cir.1989):

> Our review [of a motion to dismiss for lack of subject matter jurisdiction] is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff.

*Love*, 871 F.2d at 1491 (citations omitted).

*Norris*, 74 Haw. at 240–41, 842 P.2d at 637 (brackets added).

## III. *DISCUSSION*

### A. *Federal Preemption*

To provide a framework for our analysis, we begin by first declaring that "the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)) (brackets in original). Indeed, the question of whether a certain state action is preempted by federal law is one of congressional intent. Accordingly, the purpose of Congress is the "ultimate touchstone." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978))).

Congress's purpose may be stated explicitly in a statute's language or contained implicitly in the statute's structure and purpose. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977). For example, state law is preempted if it actually conflicts with federal law, even in the absence of an express congressional command. *Pacific Gas & Elec. Co. v. Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 204 [103 S.Ct. 1713, 1722, 75 L.Ed.2d 752] (1983). State law also is preempted if federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 [102 S.Ct. 3014, 3022, 73 L.Ed.2d 664] (1982) (quoting *Rice*, 331 U.S. at 230 [67 S.Ct. at 1152]). Both of these principles of preemption apply in the case of ERISA.

Marilyn Klinger & James P. Diwik, *ERISA Preemption and the Surety*, 29 Tort & Ins. L.J. 111, 112 (1993).

Accordingly, the primary question before us is whether Congress, in ERISA, expressly or impliedly intended to preempt Hawai'i's generic mechanic's and materialman's lien law; and if Congress' intent is not "clear and manifest," we apply the basic rule disfavoring federal preemption of state laws. *Cipollone*, 505 U.S. at 516, 112 S.Ct. at 2617.

### B. *ERISA Preemption*

In the introduction to the statute, Congress defined the policy goals of ERISA:[8]

8. Pub.L. No. 93–406, 88 Stat. 829 (1974) (codified at 29 U.S.C. §§ 1001–1461 (1988)).

Shortly after ERISA's enactment, its constitutionality was challenged. The courts concluded that the Tenth Amendment [of the United States Constitution] ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.") posed no bar to ERISA's operation because Congress correctly determined that employee benefit plans affect interstate commerce and thus warrant federal intervention. Furthermore, preemption of contemporaneous state legislation was necessary to accomplish

the legislative purposes of ERISA. Because the Supremacy Clause states that the "Constitution, and the Laws of the United States ... shall be the supreme law of the Land," the Constitution itself allows for preemption of state laws that "interfere with, or are contrary to the laws of Congress." However, the "exercise of federal supremacy is not lightly to be presumed."

Julie K. Swedback, *The Deemer Clause: A Legislative Savior for Self–Funded Health Insurance Plans Under the Employee Retirement Income Security Act of 1974*, 18 Wm. Mitchell L.Rev. 757, 769–70 (1992).

[T]he policy of [ERISA is] *to protect* interstate commerce and *the interests of participants in employee benefit plans* and their beneficiaries, *by requiring the disclosure and reporting to participants and beneficiaries of financial and other information* with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA § 2(b), 29 U.S.C. § 1001(b) (1988) (emphases added).

Thus, Congress enacted ERISA in 1974 to protect plan participants and beneficiaries from abuses and mismanagement in the administration of employee pension and benefit plans. Secondly, Congress provided the preemption clause of § 514(a) to protect plan administrators from the "burden that would be imposed by a patchwork scheme of regulation." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11–12, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

To enforce the goals of ERISA, the drafters developed a three-step process to determine the impact of ERISA on state laws. First, the drafters constructed a broad preemption clause stating, "Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." ERISA § 514(a), 29 U.S.C. § 1144(a) (1988). Thus, "ERISA involved not only the creation of new law but also the displacement of a larger body of existing state law." James D. Hutchinson & David M. Ifshin, *Federal Preemption of State Law Under the Employee Retirement Income Act of 1974*, 46 U. Chi. L.Rev. 23, 34 (1978)....

Second, to mitigate the harsh impact of the preemption clause on the displacement of state power, ERISA's drafters included a "savings clause," which returned to the states the power to regulate traditional areas of commerce—insurance, banking, and securities. [*See*] ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) (1988). State law that regulates these areas is thus "saved" from the broad sweep of ERISA's preemption clause.

Third, the drafters modified the scope of ERISA's savings clause through the "deemer clause." [*See*] ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (1988). The deemer clause qualifies the savings clause by providing that an employee benefit plan cannot be deemed an insurance company solely for the purpose of a state law which "purport[s] to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." [*See*] ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) (1988).

Swedback, *supra*, at 763–65 (brackets and emphasis added).

The United States Supreme Court has dealt extensively with statutory interpretation issues in ERISA. *See, e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Noting that courts must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *FMC Corp.*, 498 U.S. at 57, 111 S.Ct. at 407 (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)), the United States Supreme Court carefully and consecutively addressed each significant phrase within section 514's clauses.

In measuring the breadth of ERISA's preemptive effect, the most obvious ambiguity concerns the meaning of "relates to."[9] Catherine L. Fisk, *The Last Article About the Language of ERISA Preemption? A Case Study of the Failure of Textualism*, 33

---

9. *See supra* note 3. In order to measure the breadth of ERISA's preemptive effect, the Court had to define which state laws "related to" employee benefit plans.

Harv. J. on Legis. 35, 47 (1996). In light of this ambiguity, HLTF contends that the trial court erred in holding that HRS § 507–42 "relates to" employee benefit plans.[10] We must therefore determine in the instant case whether HRS § 507–42 is expressly preempted by ERISA, *i.e.*, whether HRS § 507–42 falls within the scope of ERISA's preemption clause. If not explicitly preempted by ERISA, the next question is whether HRS § 507–42 conflicts with ERISA and thus is impliedly preempted. In doing so, we must first examine cases decided by the Supreme Court that address the term "relate to."

### 1. Cases Addressing the Term "Relate To"

*Shaw, supra,* represents the Court's first look at the scope of ERISA's preemption clause. In the early 1980s, several airlines and other employers sought injunctive relief in federal court regarding the pregnancy provisions of the New York Human Rights Law and the New York Disability Benefits Law. *Shaw,* 463 U.S. at 88, 103 S.Ct. at 2895. The combined effect of the laws forbade employment discrimination on the basis of pregnancy and required employers to offer disability benefits for pregnancy and other nonoccupational disabilities. *Id.* at 88–90, 103 S.Ct. at 2895–96.

The employers argued that, insofar as the New York Human Rights Law related to employee benefit plans, ERISA operated to preempt state law. *Id.* at 92, 103 S.Ct. at 2897. Seeking the broadest interpretation of the preemption clause, the employers claimed that the state could not directly regulate ERISA-covered benefit plans. *Id.* at 100–01, 103 S.Ct. at 2901–02. On the other hand, the New York Commission of Human Rights focused on section 514(d) of ERISA which provides, "§ 514(a) [the preemption clause] shall not 'be construed to alter, amend, modify, invalidate, impair, or super-

sede any law of the United States.' " *Id.* The Commissioner contended that New York's Human Rights Law provided "a means of enforcing the Pregnancy Discrimination Act of 1978 which made discrimination based on pregnancy unlawful under Title VII of the Civil Rights Act of 1964." *Id.*

The United States Supreme Court held that the New York Humans Rights Law and Disability Benefits Law most definitely related to employee benefit plans. *Id.* at 96, 103 S.Ct. at 2899–2900. Applying the "plain meaning test," by adopting the *Black's Law Dictionary* definition,[11] the Court held that, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2900. Because the New York Human Rights Law "has a connection with or reference to" employee benefit plans, the law could be preempted, but "only insofar as it prohibit[ed] practices that [are] lawful under federal law." *Id.* at 108, 103 S.Ct. at 2906.

Following *Shaw,* the United States Supreme Court in *Metropolitan Life Ins., supra,* addressed ERISA preemption involving a Massachusetts statute that required minimum mental health care benefits for residents covered by general health insurance policies. Noting that the ERISA preemption clauses were "perhaps not a model of legislative drafting," the Court held that, although the Massachusetts's statute related to employee benefit plans, it was not preempted by ERISA because the state statute was one that regulated insurance. *Metropolitan Life Ins.,* 471 U.S. at 739, 105 S.Ct. at 2388–89.

In 1987, the Court, in *Pilot Life Ins., supra,* addressed ERISA preemption that concerned common law contract and tort claims against an insurance company that issued a group employer's policy. The Court held that:

---

10. HLTF also contends that the trial court erred as a matter of law in admitting into evidence documents that were not supported by any affidavit. Because we are reviewing the trial court's dismissal for lack of subject matter jurisdiction and not on the court's summary judgment rulings, we will not address HLTF's second contention on appeal.

11. " 'Relate. To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " *Shaw,* 463 U.S. at 97 n. 16, 103 S.Ct. at 2900 n. 16 (quoting *Black's Law Dictionary* 1288 (6th ed.1990)).

[t]here is no dispute that the common law causes of action asserted in Dedeaux's complaint "related to" an employee benefit plan and therefore fall under ERISA's express preemption clause, § 514(a). In both *Metropolitan Life Ins.* and *Shaw*, we noted the expansive sweep of the pre-emption clause. In both cases "[t]he phrase 'related to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan[.]' "

*Pilot Life Ins.*, 481 U.S. at 47, 107 S.Ct. at 1553 (citation omitted). *See also The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008–09 (9th Cir.1995).

In 1988, the Court clarified the preemption issue in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In *Mackey*, the issue concerned the extent to which ERISA preempts Georgia's general garnishment statute and a specific Georgia statute expressly governing the garnishment of benefits due to employee welfare benefit plan participants. The issue was before the Court because judgment creditors of plan participants were attempting to garnish the plan participants' benefits.

The Court had no trouble in concluding that Georgia's specific benefit garnishment statute "relates to" an employee benefit plan and is therefore preempted. As the Court stated, "[t]he Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans." *Id.* at 829, 108 S.Ct. at 2185. Of particular interest is the Court's further comment:

> The possibility that [the Georgia statute] was enacted by the Georgia Legislature to help effectuate ERISA's underlying purpose ... is not enough to save the state law from pre-emption. "The pre-emption provision [of § 514(a)] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements."

*Id.*

With respect to Georgia's general garnishment statute, the Court held that employee welfare benefit plan payments can be gar-

nished because ERISA does not preempt such state laws. The Court so held notwithstanding the argument that plan administrators become parties to a suit when an employee welfare benefit plan is garnished and must respond and deposit the demanded funds due the beneficiary-debtor, thereby incurring administrative burdens and costs. The Court held that Congress did not intend to forbid the use of state-law execution mechanisms against welfare benefit plan participants, even when those mechanisms prevent those participants from receiving their benefits. *Id.* at 836, 108 S.Ct. at 2188–89.

In 1990, the United States Supreme Court addressed ERISA preemption in yet another case, *FMC Corp., supra*, relating to the subrogation of medical expenses. The Court held that the Pennsylvania statute in question had a "reference" to benefit plans governed by ERISA inasmuch as:

> [t]he statute states that "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from claimants' tort recovery with respect to ... benefits ... paid or payable under section 1719." Section 1719 refers to "[a]ny program, group contract or other arrangement for payment of benefits." These terms "includ[e], but [are] not limited to, benefits payable by a hospital plan corporation or a professional health service corporation."

*FMC Corp*, 498 U.S. at 59, 111 S.Ct. at 408 (brackets added).

Another example of the Supreme Court's treatment of ERISA preemption is *Ingersoll–Rand, supra*. *Ingersoll–Rand* addressed whether ERISA preempts a state common-law claim that an employee was discharged unlawfully in order to prevent his attainment of benefits under an ERISA plan. *Ingersoll–Rand*, 498 U.S. at 137–38, 111 S.Ct. at 481–82. After emphasizing the breadth of the preemption clause, the Court explained the basis for that expansive scope:

> The key to § [514(a)] is found in the words "relate to." Congress used those words in their broad sense, rejecting more limited pre-emption language.... More-

over, to underscore its intent that § [514(a) ] be expansively applied, Congress used equally broad language in defining the "State law" that would be preempted. Such laws include "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).

*Id.* at 138–39, 111 S.Ct. at 482–83 (brackets added).

The *Ingersoll–Rand* Court went even further and stated that the state law must relate to a benefit "plan" in order for preemption to apply. *Id.* at 139, 111 S.Ct. at 482–83. The distinction between an ERISA plan and benefits was emphasized in *Fort Halifax Packing, supra,* where the Court said:

> The purposes of ERISA's pre-emption provision make clear that the … statute in no way raises the types of concerns that prompted pre-emption. Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligations. It is for this reason that Congress pre-empted state laws relating to plans, rather than simply to benefits. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

*Fort Halifax Packing,* 482 U.S. at 11–12, 107 S.Ct. at 2217–18.

"Thus, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment." *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483. Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s]

to" an ERISA plan as opposed to benefits. *Id.*

In 1992, the Supreme Court dealt with ERISA preemption concerning a state statute involving health insurance coverage for injured workers eligible for workers' compensation benefits in *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992). The *Greater Washington* Court stated that a state law is not preempted by ERISA if the state law has only a "tenuous, remote, or peripheral" connection with covered plans as is the case with many laws of general applicability. *Id.* at 130 n. 1, (citing *Shaw,* 463 U.S. at 100, n. 21, 103 S.Ct. at 2901 n. 21; *Mackey,* 486 U.S. at 830–38 & n. 12, 108 S.Ct. at 2185–2190 & n. 12).

▪ Thus, in summary, the Court, recognizing that "Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations[,]" *see Fort Halifax Packing,* 482 U.S. at 11–12, 107 S.Ct. at 2217, has held that a state law directed at or having a reference to employee benefit plans, even if consistent with ERISA's substantive requirements, *see Mackey,* 486 U.S. at 829, 108 S.Ct. at 2185, "relates to" employee benefit plans and is thus expressly preempted by ERISA. It therefore follows that, under *Mackey* and *Greater Washington, supra,* a state law of general applicability is not expressly preempted by ERISA because it has only a "tenuous, remote, or peripheral" connection with covered plans.[12] In other words, state laws of general applicability do not fall within ERISA's sphere of regulation.

### 2. *Mechanic's Lien*

Because the United States Supreme Court has never specifically addressed whether a neutral and generic state mechanic's and materialman's lien law, such as HRS § 507–42, "relates to" and is therefore expressly

---

12. *See, e.g., United Wire v. Morristown Memorial Hospital,* 995 F.2d 1179, 1192 (3rd Cir.1993) (holding that "[a] rule of law relates to an ERISA plan, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan."); *Vartanian v. Monsanto Co.,* 822 F.Supp. 36, 42

(D.Mass.1993) (holding that ERISA does not automatically preempt all actions involving pension plans because it does not automatically preempt state laws that have only a tenuous, remote, peripheral impact); *Westhoven v. Lincoln Foodservice Products,* 616 N.E.2d 778, 781 (Ind.Ct. App.1993).

preempted by ERISA,[13] we look to *Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc.*, 151 Wis.2d 233, 445 N.W.2d 43 (App.1989), which is directly on point factually with the instant case. In *Immel*, an employee benefit plan sought to enforce a construction lien provided by Wisconsin law against a construction project in an attempt to collect delinquent contributions owed by a judgment-proof employer.

The trial court concluded that the trust funds had a valid construction lien and, because the Wisconsin statute authorizing construction liens had only a "tenuous, remote and peripheral" effect on employee benefit plans, the Wisconsin statute was not preempted by ERISA. *Id.* 445 N.W.2d at 44. The Wisconsin lien statute,[14] similar to HRS § 507–42, benefited "any person furnishing labor." [15] *Id.* The Wisconsin Court of Appeals held that ERISA did not preempt a general creditor's rights created by Wisconsin law; hence, the employee benefit plan was able to use Wisconsin's construction lien statute to collect unpaid contributions due under the master labor agreement. *Id.* at 46.

In addressing the issue of ERISA preemption, the Wisconsin Court of Appeals drew an analogy to the United States Supreme Court's ruling in *Mackey, supra:*

> The United States Supreme Court has held that Congress did not intend to prohibit the use of state law garnishment procedures to execute judgments against ERISA benefit plans. *Mackey*, 486 U.S. at 831–32 [108 S.Ct. at 2186–87]. If plans may use state law to collect on a judgment against a plan, certainly ERISA does not preempt the plan's ability to use those procedures to collect a judgment on behalf of the plan.

*Immel*, 445 N.W.2d at 45. The *Mackey* court reasoned that if a state law may be asserted against a plan, then, equally, the plan may use that same state law against a third party. The *Immel* court commented that 29 U.S.C. § 1145 was the only ERISA provision relating to the collection of unpaid trust fund contributions.[16] *Id.*

Because none of the ERISA provisions has established any methods for collecting judgments on unpaid contributions, the *Immel*

---

13. The Ninth Circuit Court of Appeals addressed the State of Nevada's law making a general contractor liable for the debts of his or her subcontractors in *Trustees of the Electrical Workers Health & Welfare Trust v. Marjo Corp.*, 988 F.2d 865 (9th Cir.1992). The Ninth Circuit held that the state law at issue in *Marjo* was preempted by ERISA to the extent that the state law's enforcement mechanism supplemented those provided by ERISA. *Id.* at 867.

Furthermore, the California Supreme Court addressed California mechanic's lien law in *Carpenters Southern California Administrative Corp. v. El Capitan Development Co.*, 53 Cal.3d 1041, 282 Cal.Rptr. 277 811 P.2d 296 (Cal.1991) (en banc), *cert. denied*, 502 U.S. 963, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991), and held that it was preempted by ERISA because the law was specifically designed for, and made reference to, ERISA. *Marjo* and *El Capitan* are distinguishable from the present case. Unlike the state laws at issue in *Marjo* and *El Capitan*, HRS § 507–42 is a neutral/general statute which was not enacted in relation to ERISA employee benefit plans.

14. Wisconsin lien statute 779.036(1) states in pertinent parts:

> In any case in which an improvement is constructed or to be constructed pursuant to a contract and payment bond under s. 779.035, any person furnishing labor ... to any prime contractor or subcontractor shall have a lien

on the money or other payment due or to become due the prime contractor or subcontractor; therefore, if the lienor, before payment is made to the prime contractor or subcontractor, gives written notice of the lienor's claim....

15. Hawai'i's mechanic's lien statute, HRS § 507–42, is similar to the Wisconsin mechanic's lien statute in several respects: (1) both statutes contain language to protect the financial interests of "any person furnishing labor"; (2) both statutes have been characterized as being of a broad remedial nature and are liberally construed to effectuate the state's legislative intent of protecting the claims of laborers, tradesmen, and materialmen; (3) both statutes are of a generic nature; (4) both statutes create general creditors' rights; (5) both statutes operate independently of the establishment of an ERISA plan; and (6) neither statute refers to ERISA.

16. 29 U.S.C. § 1145 provides:

> Every employer who is obligated to make contributions to a multiemployer plan or under the terms of a collective bargained agreement shall, to the extend not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

court held that *ERISA does not preempt ERISA-regulated funds from using state law available to general creditors to collect money judgments. Id.* 445 N.W.2d at 45–46.

With that analysis, the *Immel* court focused on the generic nature of Wisconsin's construction lien statute, which did not refer to employee benefit plans. *Id.* at 46. The court stated that Wisconsin's lien statute provided a "remedy available to a certain class of creditors that transcends ERISA obligations and concerns." *Id.* The *Immel* court therefore held that ERISA did not preempt the use of Wisconsin's construction lien statute by employee benefit plans to recover fringe benefit contributions. *Id.*

### 3. *HRS § 507–42 is Not Preempted by ERISA*

Having reviewed state and federal case law relevant to the present case, we must now specifically determine whether Hawai'i's Mechanic's and Materialman's Lien Law, *i.e.*, HRS § 507–42, "relates to" an ERISA plan. For the reasons set forth below, we hold that ERISA does not explicitly or implicitly preempt HRS § 507–42.

#### a. *HRS § 507–42 Does Not "Relate To" or "Purport to Relate To" Employee Benefit Plans.*

As set forth in part III.B.1, *supra*, in 1992, the United States Supreme Court held in *Greater Washington, supra*, that, under section 514(a), ERISA shall supersede any and all state laws insofar as they "may now or hereinafter relate to" any employee benefit plan covered by ERISA. *Greater Washington*, 506 U.S. at 129, 113 S.Ct. at 583. Accordingly, there is no ERISA preemption "if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans 'as is the case with many laws of general applicability.'" *Id.* at 130 n. 1, 113 S.Ct. at 583 n. 1 (citing *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *Mackey*, 486 U.S. at 830–38, n. 12, 108 S.Ct. at 2185–90, n. 12).

The test for preemption as set forth by the Court is best illustrated through *Mackey, supra.* As discussed in part III.B.1, *supra*, the Supreme Court in *Mackey* distinguished between state statutes that "single[ ] out"

ERISA employee welfare benefit plans, on the other hand, and state statutes that are more "general" in nature, on the other. The Supreme Court held that, while the former state statutes are preempted by ERISA, the latter state statutes are not.

Based on the Supreme Court's distinction in *Mackey*, we hold that HRS § 507–42, which is similar to Wisconsin's lien statute discussed in *Immel, see* part III.B.2, *supra*, is not expressly preempted by ERISA because it is a law of general applicability that does not relate to any employee benefit plan covered by ERISA. HRS § 507–42 merely provides a "remedy available to a certain class of creditors that transcends ERISA obligations and concerns." *Immel*, 445 N.W.2d at 46.

#### b. *Hawai'i's Lien Law is Not in Conflict with ERISA.*

Given that the purpose of ERISA's preemption provision is to "afford employers [or fund trustees of multiemployer benefit plans] the advantages of a uniform set of administrative procedures" in order to avoid "the burden that would be imposed by a patchwork scheme of regulation," see *Fort Halifax Packing*, 482 U.S. at 11–12, 107 S.Ct. at 2217, it does not follow that the fund trustees themselves are preempted from using a state law available to general creditors to collect money judgments. Indeed, under ERISA, trustees of multiemployer benefit plans are endowed with broad powers to collect fringe benefit contributions. Along with such powers, the trustees are responsible for collecting the contributions in a diligent, systematic, and reasonable manner. *Central States Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 573–74, 105 S.Ct. 2833, 2841–42, 86 L.Ed.2d 447 (1985).

The continuing problem of collecting employer contributions resulted in the enactment of the Multiemployer Pension Plan Amendments Act of 1980, P.L. 96–364, 94 Stat. 1208 (1980) (MPPA), in order to supplement ERISA. Additionally, Congress created a statutory cause of action by adding section 515 to ERISA, 29 U.S.C. § 1145. The intent of section 515 was "to promote the

prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies." Staff of Sen. Comm. on Labor and Human Resources, 96th Cong., 2d Sess. S. 1076, *The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration* (Comm. Print 1980) at 43–44.

■ Accordingly, in view of the policy reasons behind ERISA and MPPA, the use of Hawai'i's Mechanic's and Materialman's Lien Law, HRS § 507–42, to assist with the collection process, is consistent with this intent. Because Hawai'i's lien law is not in conflict with ERISA, it is not impliedly preempted.

#### c. *Congressional Intent Disfavors ERISA Preemption of State Lien Laws.*

Furthermore, in enacting the MMPA, Congress clearly sought to address the problems created by employer delinquencies in multiemployer benefit plans, to promote prompt payment of contributions, and to assist plans in recovering the costs incurred in connection with delinquencies. Staff of Sen. Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076, *The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration* (Comm. Print 1980) at 43–44.

Congress never intended to prevent the trust funds from using any neutral state statute that did not relate to employee benefit plans. "The Committee amendment does not change any other type of remedy permitted under State or Federal Law with respect to delinquent multiemployer plan contributions." H.R.Rep. No. 869, 96th Cong., 2d Sess, *reprinted in* 1980 U.S.C.C.A.N. 2993, 3038.

Moreover, Congress's disfavor of ERISA preemption of state lien laws is apparent in a legislative proposal to clarify ERISA's preemption clause. Introduced on February 23, 1993, H.R. 1036 would amend ERISA section 514(b) to clarify that ERISA does not preempt state and local laws that provide additional remedies or other means for collection of employer contributions to an employee benefit plan. The bill was referred to the House Committee on Education and La-

bor and was approved by the full committee on June 23, 1993.

A recent House of Representatives committee report suggests that Congress never intended at the time it enacted ERISA that the legislation would preempt state laws that provide a general means to employee benefit plans for the collection of amounts lawfully due from employers. The report states:

> There is no indication that Congress intended ERISA to deny employee benefit plans and participants access to State law remedies and other means for collecting employer contributions, such as lien laws. To the contrary, Congress has expressly declared the effective collection of employer contributions by multiemployer plans to be an important policy concern of ERISA.

Thus, the congressional committee announced its intention to endorse the bill to counteract and clarify federal and state judicial decisions, discussed in this article, that reflect what Congress considers to be a

> disturbing tendency to uphold challenges to State laws establishing important worker protections on the basis of ERISA preemption, in spite of strong legal and policy evidence that Congress never intended these laws to be preempted. Among these are State laws affecting ... mechanics liens and other enforcement tools for multiemployer plans to collect delinquent pension contributions.

Apparently, Congress also has found that the courts' application of ERISA preemption inequitably distinguishes between two groups of persons: (1) those employees who are not members of ERISA plans and therefore may resort to the use of mechanic's liens and other state remedies to ensure that their employers fulfill their employee benefit obligations; and (2) those employees who are members of ERISA plans and whose only recourse for collecting delinquent employer contributions is federal law. The committee report concludes that this distinction was never the intent of Congress in enacting the ERISA

preemption provision. The congressional committee concluded its report by declaring that excepting state-law remedies or means for collection of contributions to employee benefit plans from ERISA's general rule of preemption not only would serve Congress's intent on the issue of preemption, but, more importantly, would advance the fundamental protective policies underlying ERISA by preserving pertinent state laws without interfering with the federal regulatory framework for employee benefit plans provided by ERISA.

Klinger, *supra*, at 127–28 (footnotes omitted). *See Sol v. AIG Hawai'i Ins. Co.*, 76 Hawai'i 304, 309, 875 P.2d 921, 926 (1994) (quoting *In the Interest of John Doe*, 76 Hawai'i 85, 92 n. 10, 869 P.2d 1304, 1310 n. 10 (1994) (quoting *Franks v. City and County of Honolulu*, 74 Haw. 328, 340 n. 6, 843 P.2d 668, 674 n. 6 (1993))) (" '[T]his court has used subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision.' ") (citation omitted).

In light of the legislative history and pending legislation noted above, it is apparent that Congress, having declared that "effective collection of employer contributions by multiemployer plans to be an important policy concern of ERISA," *see* Klinger, *supra*, at 127, did not intend to deny employee benefit plans access to state enforcement tools to collect delinquent contributions.

### d. ERISA Preemption in This Case "Would Ignore Relevant Federal Policy and Fly in the Face of Logic."

We have expressly recognized in *Hawai'i Carpenters' Trust Funds v. Aloe Development Corp.*, 63 Haw. 566, 633 P.2d 1106 (1981), that the trustees of employee benefit plans have a fiduciary duty to collect delinquent trust fund contributions, and, accordingly, may utilize HRS § 507–42 in the

discharge of their fiduciary duties to the beneficiaries of the HLTF.[17]

In *Aloe*, the general contractor appealed the circuit court's decision allowing a lien by the lienors-trustees of the employee benefit trust fund on land and improvements, pursuant to HRS § 507–42, in an attempt to enforce the employer's obligation to make fund contributions required under the collective bargaining agreement. *Id.* at 573, 633 P.2d at 1110.

The *Aloe* court explained:

"Congress directed that union welfare funds be established as written formal trusts, and that the assets be 'held in trust' and be administered 'for the sole and exclusive benefit of the employees ... and their families and dependents....' 29 U.S.C. § 186(c)(5)." *NLRB v. Amax Coal Co.*, [453] U.S. [322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672] (1981). And in approving ERISA, Congress "essentially codified the strict fiduciary standards that a § 302(c)(5) trustee must meet." *Id.* Therefore, "ERISA requires a trustee to 'discharge his duties ... solely in the interest of the participants and beneficiaries....' 29 U.S.C. § 1104(a)(1)." *Id.* at 332, 101 S.Ct. at 2796 (footnote omitted). "Indeed, the trustees have an obligation to *enforce* the terms of the collective bargaining agreement regarding employee fund contributions against the employer 'for the sole benefit of the beneficiaries of the fund.' " *Id.* at 336–37, 101 S.Ct. at 2798 (*quoting United States v. Carter*, 353 U.S. 210, 220 [77 S.Ct. 793, 798, 1 L.Ed.2d 776] (1957)) (emphasis in the original). A determination that the trustees of the Hawai'i Carpenters' Trust Funds may not seek the aid of our mechanic's lien law in discharging this obligation would ignore relevant federal policy and fly in the face of logic.

* * * *

---

**17.** Owners contend that, in light of the fact that *Aloe* has never been cited in any published opinion in connection with any analysis of the ERISA preemption, "*Aloe* does not provide any precedent on which to base a reversal of the circuit court's decisions." We disagree. *Aloe* is important for the purpose of the appeal before us because it discusses in depth the policies of HRS

§ 507–42, the HLTF trustees' heavy reliance on state laws when managing the affairs of the trust fund, and the consequences of HRS § 507–42 being preempted. For these important reasons, we will not disregard *Aloe* for the sole reason that no published opinion regarding ERISA preemption has cited *Aloe*.

The remedial aspects of HRS § 507–42 have been construed liberally during its long history to accomplish a beneficent purpose of properly protecting "Mechanics and Materialmen who have furnished both time and material for others." *See* [Rep. No. 69 of the Judiciary Comm., Legis. Assembly—Session, 1888]. We perceive no basis for now concluding they are devoid of a capacity for adjustment to changing patterns of compensation induced by collective bargaining under the federal regime. We would not be recognizing the "vintage" qualities of our lien law if we were to hold it lacks such vitality.

*Aloe,* 63 Haw. at 576–77, 633 P.2d at 1112–13 (footnotes omitted) (emphasis and brackets added).

As indicated in *Aloe,* it is within the state's sovereign powers to determine that laborers enjoy superior creditor priority than that of other creditors who may have a financial interest in the assets of an owner who has made improvements on his or her property. Furthermore, a state has a right and obligation to protect the interests of its citizens within its borders. Therefore, by allowing ERISA beneficiaries to collect delinquent funds, Hawai'i is protecting those whom it is obligated to serve. As noted in *Metropolitan Life Ins., supra,*

"States traditionally have had great latitude under their police powers to legislate as 'to the protection of the lives, limbs, health, comfort, and quiet of all persons.'" *Slaughter–House Cases,* 16 Wall. 36, 62 [21 L.Ed. 394] (1873), quoting *Thorpe v. Rutland & Burlington R. Co.,* 27 Vt. 140, 149 (1855). "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State."

*Metropolitan Life Ins.,* 471 U.S. at 756, 105 S.Ct. at 2398.

## IV. *CONCLUSION*

Based upon the foregoing, we hold that ERISA does not preempt HRS § 507–42. Accordingly, we vacate the decision of the circuit court and remand with instructions to proceed on the foreclosure of the subject lien properties.