77 N.Y.2d 175 (1990)
In the Matter of Niagara Venture, a Limited Partnership, Respondent,
v.
Sicoli & Massaro, Inc., et al., Appellants, et al., Respondents.
Court of Appeals of the State of New York.
Argued November 13, 1990.
Decided December 27, 1990.
Robert W. Michalak and Lisa G. Massaro for Sicoli & Massaro, Inc., appellant.
Craig L. Miller for Patterson-Stevens, Inc., appellant, relying on the brief of Sicoli & Massaro.
Richard G. Collins for Niagara Venture, respondent.
Chief Judge WACHTLER and Judges SIMONS and HANCOCK, JR., concur with Judge KAYE; Judge BELLACOSA dissents and votes to affirm in a separate opinion in which Judges ALEXANDER and TITONE concur.
*177 KAYE, J.
Are private improvement (or mechanics') liens valid against a property owner's interest in the undeveloped portion of a tract when, at the time the liens are filed, the owner has conveyed the developed portion of the tract to a third party? For the reasons stated below, we answer that question in the affirmative, and dismiss petitioner property owner's petition to discharge respondents' liens.
This controversy centers on the construction of a water theme park  "The Niagara Splash"  in the City of Niagara Falls. The project was initiated by a series of agreements among Niagara Venture (petitioner), the City of Niagara Falls (the City) and the Niagara Falls Urban Renewal Agency, and was funded in part by public grants and loans from the City. Pursuant to an agreement dated October 15, 1986, the City and the Urban Renewal Agency conveyed a total of 20.6 acres to petitioner. As provided in the agreement, the northerly portion of the parcel was to be the site of the theme park structures, and the southerly portion, fronting on Rainbow Boulevard in the City, was to become part of a previously *178 approved hotel complex. The agreement further contemplated a later sale-and-leaseback between petitioner and the City.[1]
In March 1987, petitioner entered into agreements with various contractors and suppliers, including respondents, for labor and materials to construct the theme park. It is undisputed that at the time of these arrangements, petitioner owned the unified 20.6 acre tract upon which the improvements were made.
On September 3, 1987, in accordance with the sale-and-leaseback arrangement contemplated by the October 15, 1986 agreement, petitioner conveyed the developed 16.1-acre portion of the tract, containing the theme park structures, to the City for a nominal amount, and retained the undeveloped 4.5-acre portion of the tract. The City thus became record owner of the 16.1 acres and leased it back to petitioner, who was to pay rent in the amount of its debt service obligations to the City. The agreement specifies that the lease will run until all such obligations are paid, at which time petitioner will repurchase the parcel for a nominal amount. Petitioner, under the agreement and its amendments, is meanwhile obligated to pay taxes based on the full assessment value of the 20.6 acres and in addition is to receive all depreciation and tax losses, deductions or credits relating to the theme park buildings, machinery and equipment.
It is undisputed that petitioner gave respondents no prior notice of the September 3, 1987 conveyance, and that at the time of the conveyance respondents had not yet demanded and been refused final payment for their work. In November 1987 and May 1988, respondents filed public improvement and mechanics' liens against the entire 20.6 acres. Petitioner soon after instituted the present proceeding under Lien Law §§ 19 and 20 to discharge all liens against the property, on the theory that it was no longer the owner of the improvements.
The trial court denied the request to discharge the public improvement liens, discharged the mechanics' liens to the extent they encumbered property owned by the City, and upheld the mechanics' liens on the 4.5 acres. On appeal of so *179 much of the order as upheld the mechanics' liens as against the 4.5 acres, a divided Appellate Division reversed and discharged those liens, reasoning that petitioner retained no improved property that could be the subject of private improvement liens. We now reverse, agreeing with the trial court and the Appellate Division dissenters that the mechanics' liens were valid as against the 4.5-acre balance of the tract still owned by petitioner at the time the liens were filed.
A first principle, accepted by the parties and the Appellate Division unanimously, is that a lien filed against a unified parcel operates against the owner's interest in the entire parcel even if improvements are physically made on only a portion of the property (see, W. L. Dev. Corp. v Trifort Realty, 44 N.Y.2d 489). Thus, had the liens been filed before petitioner conveyed away any portion of the parcel, those liens would have encumbered its interest in the entire parcel, including the 4.5 undeveloped acres (see, Jannotta v Noslac Realty Corp., 231 App Div 864; Woolf v Schaefer, 103 App Div 567).[2] The question that divides the parties and the Appellate Division Justices is whether petitioner is freed of the encumbrances on the 4.5-acre undeveloped portion of the tract because of its prior conveyance of the developed portion. We conclude that it is not.
Our analysis centers on the Lien Law, which creates the interests at issue here, and particularly on sections 3 and 4 of the Lien Law. Section 3 provides that: "[A] contractor [or] subcontractor * * * who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof * * * shall have a lien for the principal and interest, of the value, or the agreed price, of such labor * * * or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter."
Petitioner contends that the statutory words "upon the real property improved" limit the scope of a lien to the precise site of an improvement  a reading of the statute that would immediately put it at variance with the long-accepted principle that a lien filed against a unified parcel operates against *180 the entire parcel. But additionally, it seems plain that the purpose of those words in section 3 is to differentiate mechanics' liens from equitable liens created by contract (see, James v Alderton Dock Yards, 256 N.Y. 298, 303) and common-law liens on personal property (see, Deeley v Dwight, 132 N.Y. 59, 63). The mechanic's lien is, by contrast, a statutory creature, fashioned by the Legislature to protect those who, by their labor and materials, enhance the value of real property (see, Matter of Perrin v Stempinsky Realty Corp., 15 AD2d 48, 49, appeal dismissed 11 N.Y.2d 931; see generally, Bowmar, Lien Priorities in New York § 3.1 [1987]; Jensen, Mechanics' Liens § 1 [2d ed 1924]; Griffin, Mechanics' Liens of State of New York §§ 2, 3 [1929]).
It is the function of section 3 to define both who qualifies as a "mechanic" and the type of lien such a person secures. Section 3 does not purport to fix the extent of the lien; indeed, read literally, section 3 provides for a mechanic's lien to apply to an entire improved parcel, with no protection for a subsequent good-faith purchaser. Lien Law § 4, explicitly captioned "Extent of lien," defines the scope of the lien.
Section 4 provides that a mechanic's lien "shall extend to the owner's right, title or interest in the real property and improvements, existing at the time of filing the notice of lien." Petitioner urges that the words "real property and improvements" must be read in the conjunctive, that a lien can attach only to real property and improvements coexisting in the possession of the owner at the moment of filing. Again, petitioner's hypertechnical reading of the statute must be rejected. Section 4 explicitly creates a lien on the owner's "right, title or interest" in the real property, not in any particular segment of it (see, Gates & Co. v National Fair & Exposition Assn., 225 N.Y. 142, 156). Petitioner's interest in the improved parcel was subject to the liens prior to the conveyance, and its remaining interest is still subject to those liens.
Petitioner's strict reading of the relevant sections runs afoul also of Lien Law § 23, which specifies that the statute, being remedial, should be read liberally to secure its beneficial interests and purposes. As the Appellate Division dissenters observed, petitioner's construction "subverts the beneficial interests and purpose of the Lien Law by permitting an owner of land to escape his responsibility to his contractors and suppliers by enabling him to retain lands free and clear of the mechanic's liens filed by them, solely because the owner conveys a portion of his lands to another." (162 AD2d 992, 995.)
*181 The result we reach is fully consistent with both the letter of the Lien Law and the policy underlying the statute. The Lien Law may be said to have a dual purpose: first, to provide security for laborers and materialmen and second, to provide notice and a degree of certainty to subsequent purchasers (see, Carl A. Morse, Inc. v Rentar Indus. Dev. Corp., 56 AD2d 30, 37, affd 43 N.Y.2d 952, appeal dismissed 439 US 804). "Time of filing" in the context of section 4 is a balancing of those interests, providing security for the lienor and protection for the subsequent purchaser, not a haven for property owners seeking to escape their commitments to contractors and materialmen. Reading the statute as petitioner urges would be contrary to the first goal of the Lien Law and would not advance the second. But both statutory purposes are served when the lien is recognized as valid against the interest in the improved parcel remaining in the hands of the owner, and invalid against the portion conveyed to good-faith purchasers before the time of filing.
Applying those principles to the facts before us: had respondents' liens been filed prior to petitioner's conveyance of the developed portion of the property,[3] they would have operated against petitioner's interest in the entire parcel, irrespective of the actual physical location of the improvements on that parcel. By reason of the "time of filing" provision of section 4, respondents' liens can operate only against petitioner's remaining interest in the parcel at the time the liens are filed; they cannot reach the interest conveyed to good-faith purchasers before respondents' filings. But to say that petitioner, simply by conveying the developed portion of the parcel, can free itself of all encumbrances relating to the improvements is wholly at odds with the intent of the Lien Law. That result is especially appropriate in the present case, where petitioner continues to enjoy significant benefits of ownership of the entire parcel.
Two matters remain. First, the Appellate Division erred in its conclusion that the liens were invalid because of a failure to apportion the work and materials against distinct and independently owned premises. Such a requirement applies where several transactions, involving the improvement of distinct parcels of property, have been effected at the *182 request of independent owners (see, Contelmo's Sand & Gravel v J & J Milano, 96 AD2d 1090; Matter of Twin County Tr. Mix v Ingula Bldrs. Corp., 27 AD2d 939). A requirement of apportionment under such circumstances is found in Lien Law § 3; the work must be done at the request or with the consent of the owner of the property, or it would be plainly unfair to allow a lien. But we have no such concern in this case. There is no possibility here that an owner will be burdened with a lien related to improvements it did not request.
Second, there is no merit in petitioner's contention that respondents are amply protected by the public improvement liens. Public improvement liens are valid against "moneys of the state or of such [public] corporation applicable to the construction or demolition of such improvement, to the extent of the amount due or to become due on such contract." (Lien Law § 5.) Such liens protect subcontractors who supply labor or material for an improvement on public lands  where mechanics' liens are unavailable (see, Lien Law § 2 [8]; § 3)  by allowing them to encumber the moneys due the contractor under its contracts with the government entity. Here, the loan-leaseback structure of the transaction creates a cash flow from petitioner to the City, rather than a corpus of government funds subject to public improvement liens.
Finally, we agree that "certainty, reliability and predictability are at a premium" in this area of the law (dissenting opn, at 183). The rule that promotes those desirable objectives is that a laborer or materialman who improves a unified tract can obtain a lien on the interest in the possession of the original owner at the time of filing. To leave to case-by-case determination the question whether, and to what extent, the retained portion of a unified tract has been improved by particular work defeats those objectives.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed to the extent it seeks to discharge the private improvement liens filed against petitioner's property.
BELLACOSA, J. (dissenting).
Individuals who perform labor or provide materials to improve real property are authorized by Lien Law §§ 3 and 4 to file liens upon the real property so improved and upon the improvements; the liens extend to the owner's right, title or interest in the property and improvements existing at the time the notice of lien is filed. After the owner in this case conveyed the improved property to a third *183 party, the putative lienors filed their liens on the owner's retained unimproved property. The plain language of Lien Law §§ 3 and 4 does not recognize such a lien. Even the majority concedes that the governing provision does not literally provide this important remedy. Yet, the Court validates the liens filed in this case by deviating from the plain language of the statute regulating real property matters and titles, where certainty, reliability and predictability are at a premium.
Moreover, the majority's analysis turns on a conjectural factual hypothesis: That it is "appropriate" to construe the Lien Law to protect respondents, despite its plain governing language, because "had respondents' liens been filed prior to petitioner's conveyance of the developed portion of the property, they would have operated against petitioner's interest in the entire parcel" (majority opn, at 181 [emphasis added]).
A review of the Appellate Division cases cited to support this "long-accepted principle" shows that its application has been limited to cases where "[i]t does not appear that there was any separate contract for furnishing material to be used on the different lots, nor does it appear that the owner held title to the lots by virtue of separate conveyances or descriptions, or that they did not in fact constitute but a single parcel." (Woolf v Schaefer, 103 App Div 567, 571.) This is not such a case. Indeed, the affected owner held title to the two parcels through separate conveyances from two different owners, and contracted with the putative lienors to furnish labor and materials on only one parcel. There is, thus, no basis for this Court to make a finding of fact categorizing the two parcels as "unified" and this Court is powerless to make such a finding.
Nor is this case like W. L. Dev. Corp. v Trifort Realty (44 N.Y.2d 489), where we held that a prior recorded mortgage for materials and labor provided during the construction of street and utility improvements in a subdivision had priority over a subsequently filed mechanic's lien.
To be sure, if the owner in this case had obtained only the 16.1-acre parcel, and thereafter improved it and conveyed it to the City, a subsequently filed mechanic's lien on that parcel would have no legal consequence whatsoever. A different result should not obtain merely because the owner, at the same time the 16.1-acre parcel was obtained, also obtained an adjoining parcel from a different party for a different use.
*184 An individual who supplies labor or materials to improve a parcel which is subsequently conveyed before a lien is timely filed in compliance with the Lien Law may have a remedy under contract law, but not under the Lien Law provisions. To acquire the benefit of the latter necessarily requires explicit compliance with the statutory prerequisites because, wherever the equities may lie in this case, this Court should not unsettle statutory legal precepts in this area which are designed to avoid clouds on title, not to create them.
Order reversed, etc.
NOTES
[1] Contrary to the dissent's description of the initial series of conveyances (dissenting opn, at 183), the record indicates that the original boundary line between the two parcels was not the basis for the reconveyance to the City  that is, the deed back to the City conveyed "all of `Parcel I' and most of `Parcel II.'" It therefore cannot be said that the 16.1-acre parcel was obtained as a separate and distinct parcel from the City and reconveyed according to those original boundary lines.
[2] The premise of the dissent that there was no unified tract here (dissenting opn, at 183) is contrary to the explicit finding by the trial court that the parcel "was, in fact, a unified tract or parcel of land." The Appellate Division, while disagreeing on the effect of the reconveyance to the City, in no way disagreed with that factual finding by the trial court.
[3] There is no suggestion that the liens were untimely; apparently, when the conveyance was made respondents had not yet demanded and been refused final payment for their work.