PLUMBING INDUSTRY BOARD, PLUMBING LOCAL UNION NO. 1, Plaintiff–Appellant,

v.

E.W. HOWELL CO., INC.; American Home Assurance Co., Inc., Defendants–Appellees,

L & L Masons; T & L Fabricators and Fire End & Coker Corp., New York City School Construction Authority, Defendants.

No. 608, Docket 96–7620.

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1996.

Decided Sept. 15, 1997.

Jack B. Levitt, New York City (Edward J. Reich, Cooperman Levitt Winikoff Lester & Newman, P.C., New York City, of counsel), for Plaintiff–Appellant.

Eli S. Cohn, New York City (K. Richard Marcus, Lorraine D'Angelo, McDonough Marcus Cohn & Tretter, New York City, of counsel), for Defendants–Appellees.

Jennifer A. Clark, Blitman & King, LLP, Syracuse, NY, filed a brief for Onondaga County Laborers' Health and Welfare and Pension Funds; Onondaga County Carpenters' Health and Pension Funds; I.B.E.W. Local No. 328 Welfare and Pension Funds; Plumbers Local 73 Health and Welfare Fund and Retirement Funds; and Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds as Amicus Curiae.

Denis A. Engel, Colleran, O'Hara & Mills, Garden City, NY, filed a brief for Amicus Curiae New York State AFL–CIO.

Diana L.S. Peters, Washington, DC (Gerald M. Feder, Feder & Associates, P.C., Washington, DC, of counsel), filed a brief for the National Coordinating Committee for Multiemployer Plans as Amicus Curiae.

Before: CARDAMONE, PARKER, Circuit Judges, and WEXLER,* District Judge.

CARDAMONE, Circuit Judge.

This appeal requires us to determine whether New York Lien Law § 5 is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The lien statute permits laborers on public works projects, as well as "any trust fund to which benefits and wage supplements are due or payable for the benefit of such [laborers]" to file a lien for the value of the labor performed against the funds earmarked to pay for the public improvement. N.Y. Lien Law § 5 (McKinney 1993).

In June, 1994 plaintiff-appellant Plumbing Industry Board, Plumbing Local Union No. 1 (Board) filed a lien against the funds due the general contractor on a high school construction project after the plumbing subcontractor on the project failed to make timely payments to the Board's employee benefit plan as required under the applicable collective bargaining agreement. When the Board moved to enforce the lien in the United States District Court for the Southern District of New York (Chin, J.), the district court dismissed the Board's action after determining that Lien Law § 5 is preempted by ERISA § 514(a).

## BACKGROUND

### A. *New York Lien Law § 5*

Continuously in force in one form or another since 1878, New York's Lien Law § 5 applies to public construction projects and is designed to protect "those who, by their labor and materials, enhance the value of real property." *See Niagara Venture v. Sicoli & Massaro, Inc.,* 77 N.Y.2d 175, 180–81, 565 N.Y.S.2d 449, 566 N.E.2d 648 (1990) (discussing purpose of analogous mechanic's lien provisions). As a public improvement lien, the lien created by § 5 does not attach to real property or to the improvements thereon. *See Albany County Indus. Dev. Agency v.*

---

* Hon. Leonard D. Wexler, Senior Judge, United States District Court for the Eastern District of New York, sitting by designation.

*Gastinger Ries Walker Architects, Inc.,* 144 A.D.2d 891, 892, 534 N.Y.S.2d 823 (3d Dep't 1988). Instead, it attaches to any sums that have been appropriated for the making of the improvement. *John Kennedy & Co. v. New York World's Fair 1939, Inc.,* 260 A.D. 386, 22 N.Y.S.2d 901, 903–04 (2d Dep't 1940), *aff'd,* 288 N.Y. 494, 41 N.E.2d 789 (1942).

New York amended Lien Law § 5 in 1985, extending the ability to file such liens—formerly limited to laborers or materialmen—to "any trust fund to which benefits and wage supplements are due or payable for the benefit of such [laborers]." 1985 N.Y. Laws ch. 137, § 9. The legislative history informs us that the purpose of the amendment was to better protect the rights of workers by "supplement[ing]" the scheme for enforcing employee benefit obligations arising in connection with public works contracts, *see* 1985 N.Y. Laws ch. 137, § 1. To accomplish this goal, the statute was amended to ensure that public improvement liens could be filed for benefits and wage supplements, and to "guarantee that any trust fund to which benefits and wage supplements are due or payable has the right to file a lien." *New York State Assembly Memorandum of Introduction,* A. 2460–A, 208th Sess., 1985 Reg. Sess. Similar amendments were made to Lien Law § 3, which governs the filing of mechanic's liens against private property. *See* N.Y. Lien Law § 3 (McKinney 1993) (permitting a mechanic's lien on real property to be filed by "any trust fund to which benefits and wage supplements are due or payable for the benefit of such laborers.").

### B. *The Public Improvement Lien*

The present action arises out of a project for the construction of Townsend Harris High School in Queens, New York. In February 1992 defendant general contractor E.W. Howell Co., Inc. (Howell) entered into a contract with the New York City School Construction Authority for the construction of the school. Howell subcontracted out certain plumbing work for the project to Alumni Plumbing & Heating Co., Inc. (Alumni). In December 1993 Alumni defaulted on the fringe benefits obligations it owed under a multiemployer collective bargaining agree-

ment with the Board, allegedly in part because Howell refused to pay the amounts it owed to Alumni under the subcontract. Alumni thereafter filed for bankruptcy.

In June 1994 the Board, as trustee of the union benefits plan, filed a public improvement lien under Lien Law § 5 in the amount of $160,000 against the funds appropriated to pay for the construction of the high school. To discharge the lien, Howell posted a surety bond issued by defendant American Home Assurance Co., Inc. (American).

### C. *Prior Proceedings*

The Board began this action in state court, seeking to enforce the lien to recover the unpaid benefits contributions. After answering the complaint, defendants Howell and American removed the action to the Southern District of New York, asserting that federal jurisdiction existed because ERISA preempts the Board's state law claims. Upon removal, defendants moved for summary judgment contending that the plaintiff Board had no ground of recovery under ERISA and could not make a valid claim under its state law causes of action because such actions are preempted by ERISA. The Board cross-moved to remand the matter to state court on the ground that the district court lacked subject matter jurisdiction. On April 16, 1996 the district court, after determining that Lien Law § 5 is preempted by ERISA, granted the defendants' motion for summary judgment and denied the plaintiff's motion for remand. From this determination, the Board appeals. We affirm.

### ANALYSIS

#### I Removal Jurisdiction

■ On appeal the Board maintains that ERISA does not preempt Lien Law § 5 and that the district court therefore lacked removal jurisdiction over the action. We review the district court's conclusions regarding its subject matter jurisdiction *de novo. Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996).

A defendant in a state court civil action may remove to federal court any case over which the district court has original jurisdic-

tion, 28 U.S.C. § 1441, including any action that arises under federal law, 28 U.S.C. § 1331. In removing the plaintiff's state court enforcement action to federal court, the defendants relied upon the assertion that the plaintiff's cause of action was preempted by ERISA.

Ordinarily, a claim of preemption is a defense to be raised in the defendant's answer, and thus cannot support jurisdiction under 28 U.S.C. § 1331 because it would not appear on the face of a well-pleaded complaint. *See Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 154, 29 S.Ct. 42, 44, 53 L.Ed. 126 (1908); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Nonetheless, when Congress mandates "complete preemption" in a specific area of the law, any civil complaint raising a state law claim in that area is of necessity so federal in character that it arises under federal law for purposes of 28 U.S.C. § 1331 and permits removal to federal court under 28 U.S.C. § 1441. *Taylor,* 481 U.S. at 63–67, 107 S.Ct. at 1546–48. ERISA preemption provides a valid basis for removal jurisdiction only if (1) the state law cause of action is preempted by ERISA, and (2) that cause of action is "within the scope" of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a). *See id.; Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561, 573 (2d Cir.1995). We address each of these jurisdictional prerequisites in turn.

## II ERISA Preemption

ERISA promotes the interests of employees and their beneficiaries in employee benefit plans. The statute, comprehensive in its scope, accomplishes its aims not by requiring employers to provide any particular level of benefits, but by controlling the administration of the plans through rules regarding participation, funding and vesting, and by promulgating uniform standards for reporting, disclosure and fiduciary responsibility. It also provides for administrative oversight, imposes criminal penalties and establishes a civil enforcement scheme. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651, 115 S.Ct. 1671, 1674–75, 131 L.Ed.2d 695 (1995).

To ensure uniformity in benefits law, ERISA contains an express preemption clause, § 514(a), which provides, with certain exceptions not relevant here, that ERISA shall supersede "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a) (emphasis added). In enacting this provision, Congress sought principally to address concerns that lack of uniformity and the administrative and financial burdens of compliance with conflicting state laws might work to the detriment of plan beneficiaries, and reduce the willingness of employers to adopt such plans, or lead to a reduction in the level of benefits furnished. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990).

Although early attempts by the Supreme Court to interpret ERISA's preemption clause relied heavily upon textual analysis and a dictionary definition of "relate to," *see Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–900, 77 L.Ed.2d 490 (1983) (deriving from a Black's Law Dictionary definition the rule that a state law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."), the Court's more recent decisions have moved away from this form of "uncritical literalism." *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* —— U.S. ——, ——, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997), citing *Travelers,* 514 U.S. at 656, 115 S.Ct. at 1677. This trend stems from the realization that if the "relate to" language in § 514(a) were read literally, "pre-emption would never run its course," because "[r]eally, universally, relations stop nowhere." *Travelers,* 514 U.S. at 655, 115 S.Ct. at 1677. In other words, the phrase "relate to" for purposes of legal analysis proved to be a verbal coat of too many colors.

Instead, the Supreme Court has instructed that analysis under ERISA's preemption clause must begin with the "starting presumption that Congress does not intend

to supplant state law," *id.* at 654, 115 S.Ct. at 1676, and admonished courts applying the preemption clause to "look ... to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. at 1677. That look should be guided by common sense. It should avoid a construction that theoretically is unending, which the Supreme Court warned against when it turned away from "relate to" as a guide. Hence, to overcome the anti-preemption presumption, a party challenging a statute must convince a court that there is something in the practical operation of the challenged statute to indicate that it is the type of law that Congress specifically aimed to have ERISA supersede. *De Buono v. NYSA–ILA Med. and Clinical Servs. Fund,* —— U.S. ——, ———–——, 117 S.Ct. 1747, 1751–52, 138 L.Ed.2d 21 (1997).

█ The Supreme Court has identified several ways in which the anti-preemption presumption can be overcome. First, preemption will apply where a state law clearly "refers to" ERISA plans in the sense that the measure "acts immediately and exclusively upon ERISA plans" or where "the existence of ERISA plans is essential to the law's operation." *Dillingham,* at ——, 117 S.Ct. at 838. Second, a state law is preempted even though it does not refer to ERISA or ERISA plans if it has a clear "connection with" a plan in the sense that it "mandate[s] employee benefit structures or their administration" or "provid[es] alternative enforcement mechanisms." *Travelers,* 514 U.S. at 658, 115 S.Ct. at 1678. Outside these areas, the presumption against preemption is considerable—state laws of general application that merely impose some burdens on the administration of ERISA plans but are not "so acute" as to force an ERISA plan to adopt certain coverage or to restrict its choice of insurers should not be disturbed. *De Buono,* at —— & n. 16, 117 S.Ct. at 1753 & n. 16.

The district court concluded that New York's Lien Law § 5 is preempted by ERISA because the state law (1) expressly refers to ERISA plans and (2) provides an alternative enforcement mechanism. We ex-amine both of these proffered reasons for preemption.

### A. *"Reference To" Inquiry*

Lien Law § 5 reads, in relevant part:

"A person performing labor for or furnishing materials ... for the construction or demolition of a public improvement ... and *any trust fund to which benefits and wage supplements are due or payable for the benefit of such person performing labor,* shall have a lien for the principal and interest of the value or agreed price of such labor, including benefits and wage supplements[,] ... upon the moneys ... applicable to the construction or demolition of such improvement ..."

N.Y. Lien Law § 5 (emphasis added). The district court concluded that since the lien law addressed "any trust fund to which benefits and wage supplements are due or payable for the benefit of such [laborers]," it expressly referred to ERISA plans and could be preempted on that basis alone. On appeal, the Board contends that the state's lien law, which does not expressly mention ERISA, does not "refer to" ERISA plans because a trust fund need not necessarily be an ERISA plan in order to reap the benefits of the statute.

█ A state law may "refer to" ERISA plans for preemption purposes without directly mentioning the ERISA statute. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 55 n. 2, 59, 111 S.Ct. 403, 406 n. 2, 408, 112 L.Ed.2d 356 (1990) (statute that referred to "[a]ny program, group contract or other arrangement for payment of benefits" referred to ERISA plans). However, because "reference to" such plans generally leads to automatic preemption without any further analysis, *see NYS Health Maintenance Org. Conference v. Curiale,* 64 F.3d 794, 799 (2d Cir.1995) ("[o]nce a statute is found to have a reference to an ERISA plan, the statute is preempted automatically; no further analysis ... is required"); *Dillingham,* at ——, 117 S.Ct. at 838 (" 'reference' will result in preemption"), we will not lightly assume that a generally worded statute that does not expressly mention ERISA by name "re-

fers to" ERISA plans for purposes of preemption analysis.

Instead, an indirect reference will lead to that result only if it is clear that the state law, although not using the words "ERISA plan," applies only to ERISA plans or requires their existence in order to operate. *See Dillingham,* at —— ——, 117 S.Ct. at 838–39. A state statute will not be preempted simply because it contains a passing mention of or allusion to ERISA—a reference justifies preemption only if the challenged statute affects ERISA plans in a practical way. *See Curiale,* 64 F.3d at 800.

A proponent of preemption relying on the "reference to" prong of ERISA preemption analysis thus bears the burden of proving that the challenged statute either refers solely to ERISA plans or depends as an essential part of its operation on their existence. Here, Lien Law § 5 cannot be said to depend on ERISA for an essential part of its operation, and although the lien law will undoubtedly apply primarily to ERISA plans, we are not persuaded that it can apply *only* to such plans. For example, because some plans are exempted from ERISA coverage and Lien Law § 5 makes no distinction between ERISA-covered and non-covered plans we cannot determine with certainty that only trust funds subject to regulation under ERISA can take advantage of the lien law's provisions. Defendants have produced no contrary evidence. Absent such evidence, it may not be concluded that the challenged provision "refers to" ERISA plans for purposes of preemption. *See Dillingham,* at —— —— ——, 117 S.Ct. at 838–39 (no "reference" where program need not necessarily be covered by ERISA to reap benefits of statute).

Thus, we are unable to adopt the trial court's view that Lien Law § 5 should be preempted because it "refers to" ERISA plans.

### B. *Alternative Enforcement Mechanism*

Although not convinced that the Lien Law's language "refers to" ERISA plans in a manner sufficient to warrant automatic preemption, we nonetheless think the measure is preempted under § 514(a) because the challenged state law provides an alternative mechanism—filing a lien that attaches to improvement funds—for enforcing the rights protected by ERISA § 502(a). *See Greenblatt,* 68 F.3d at 574; *Travelers,* 514 U.S. at 656–57, 115 S.Ct. at 1677–78.

As the Supreme Court observed in *Ingersoll–Rand,* § 502(a) was intended to be "the exclusive remedy for rights guaranteed under ERISA." 498 U.S. at 144, 111 S.Ct. at 485. Simply put, § 502(a) sets forth a comprehensive civil enforcement scheme that reflects the legislature's desire to include certain remedies and exclude others, and states are not free to add or subtract additional remedies to the mix, even if doing so would be helpful to the interests of plan beneficiaries or participants. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987). In enacting §§ 502(a) and 514(a), Congress sought to eliminate alternative state law remedies for benefit plan participants and beneficiaries, relegating such persons to the six well-integrated remedies specifically provided in the statute's civil enforcement provisions, *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 11 (2d Cir.1992). Were states free to supplement the enforcement matrix at will, Congress' policy choices would be undermined. *See Pilot Life Ins.,* 481 U.S. at 54, 107 S.Ct. at 1556–57.

Applying these principles in *Romney v. Lin* [*Romney II*], we held that ERISA, by specifying who must fulfill the employer's obligation to pay benefits, impliedly provides that parties not so specified need not do so. 105 F.3d 806, 812 (2d Cir.1997), *petition for cert. filed,* 65 U.S.L.W. 3728 (U.S. Apr. 16, 1997) (No. 96–1647). A state is not free to designate new obligors for an employer's ERISA obligations. Hence, in *Romney,* we held that a New York statute that purported to cause shareholders—in a manner not required by ERISA—to assume the responsibility for paying the corporate employer's benefit obligations was in direct conflict with ERISA's provisions and was therefore preempted. 105 F.3d at 812. In contrast, where a state statute provided for employees on public works projects to be paid wages

equivalent to the local prevailing wage, we reasoned that because the statute could be satisfied through means unconnected with ERISA and because the state law regulated in an area traditionally reserved to the states that Congress did not mean to preempt, that the presumption against preemption had not been overcome. *See Burgio & Campofelice, Inc. v. NYS Dep't of Labor,* 107 F.3d 1000, 1008–10 (2d Cir.1997). And, if the facts are as the state alleges and the wages are paid directly to the workers, then the *Burgio* panel further reasoned the state statute would not be viewed as imposing an alternative enforcement mechanism. *Id.*

██ Further, while a state cannot itself require that a person pay to a plan benefit obligations that ERISA imposes on someone else, a state can—through generally applicable enforcement statutes that function irrespective of ERISA—enforce third-party obligations that are created without ERISA's mandate or influence. For example, an action on a surety contract generally will not be preempted. *See, e.g., Greenblatt,* 68 F.3d at 574; *Bleiler v. Cristwood Constr., Inc.,* 72 F.3d 13, 16 (2d Cir.1995).

Analyzing the instant case in light of these principles, we conclude that Lien Law § 5, like the statute preempted in *Romney II,* conflicts with ERISA because, as appellants concede, it requires the general contractor—absent any ERISA requirement that he do so—to assume responsibility for the subcontractor-employer's benefit obligations. Because the state law impermissibly adds to the exclusive list of parties ERISA holds responsible for an employer's benefit obligations, it cannot stand. *Romney II,* 105 F.3d at 812; *see also Trustees of Elec. Workers Health & Welfare Trust v. Marjo Corp.,* 988 F.2d 865, 866 (9th Cir.1992) (ERISA preempts state law that makes general contractor liable for contributions owed to plans by subcontractor-employer). As a consequence, Lien Law § 5 is preempted by ERISA.

In so holding, we join the majority of courts that have considered the preemption issue in the context of similar state lien laws. *See McCoy v. Massachusetts Inst. of Tech.,* 950 F.2d 13, 20 (1st Cir.1991) (preempting state lien law); *M.C. Sturgis v. Herman*

*Miller, Inc.,* 943 F.2d 1127, 1129–30 (9th Cir.1991) (same); *Iron Workers Mid–South Pension Fund v. Terotechnology Corp.,* 891 F.2d 548, 556 (5th Cir.1990) (same); *Carpenters S. Cal. Admin. Corp. v. El Capitan Dev. Co.,* 53 Cal.3d 1041, 282 Cal.Rptr. 277, 284, 811 P.2d 296, 303 (Cal.1991) (en banc) (same); *Prestridge v. Shinault,* 552 So.2d 643, 648 (La.Ct.App.1989) (same); *Edwards v. Bethlehem Steel Corp.,* 554 N.E.2d 833, 837 (Ind.Ct. App.1990) (same); *Chestnut–Adams Ltd. Partnership v. Bricklayers & Masons Trust Funds of Boston, Mass.,* 415 Mass. 87, 612 N.E.2d 236, 237 (1993) (same); *Puget Sound Elec. Workers Health & Welfare Trust Fund v. Merit Co.,* 123 Wash.2d 565, 870 P.2d 960, 964 (1994) (en banc) (same); *but see Hawai'i Laborers' Trust Funds v. Maui Prince Hotel,* 81 Hawai'i 487, 497, 918 P.2d 1143, 1153 (1996) (ERISA does not preempt lien statute); *Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc.,* 151 Wis.2d 233, 445 N.W.2d 43, 46 (App.1989) (same).

### III   Within the Scope of ERISA § 502(a) For Removal Jurisdiction

██ A ruling that the presumption against preemption has been overcome does not end analysis. The Supreme Court has ruled that complete ERISA preemption will not necessarily and in all cases suffice to support federal removal jurisdiction. To support jurisdiction the suit allegedly preempted must be within the scope of § 502(a). *See Metropolitan Life Ins. Co.,* 481 U.S. at 64–66, 107 S.Ct. at 1546–48. A state court may, in some cases, be the only court that has jurisdiction to rule on the preemption issue. *Romney II,* 105 F.3d at 813.

██ A suit need not be a cognizable, winning claim under § 502(a) in order to fall "within the scope" of the provision for purposes of the jurisdiction analysis. Rather, a state cause of action that acts as an alternative means of vindicating the rights protected by § 502(a) is "within the scope" of the section even if the suit is directed against a defendant not liable under ERISA. *Id.* Here, of course, the plaintiff's state law claims are within the scope of § 502(a) because they aim to redress, through other

means, violations of rules that § 502(a) is designed to enforce. Thus, the second prong of the jurisdictional test for removal purposes is met.

## CONCLUSION

In sum, because ERISA preempts Lien Law § 5, and the plaintiff's cause of action is within the scope of ERISA § 502(a), the district court had subject matter jurisdiction over the action, and the motion for remand to state court was properly denied. Because the plaintiff's state law cause of action was preempted by ERISA, the defendant's motion for summary judgment dismissing that action was also properly granted. Accordingly, the judgment of the district court is affirmed.