## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2020

(Argued: June 24, 2021     Decided: August 5, 2021)

Docket No. 20-1804-cv

_____

53RD STREET, LLC,

*Plaintiff-Appellee,*

v.

U.S. BANK NATIONAL ASSOCIATION,

*Defendant-Appellant.*

_____

Before:

LEVAL, CABRANES, and PARK, *Circuit Judges.*

Defendant U.S. Bank National Association ("U.S. Bank") appeals from the grant of summary judgment to Plaintiff 53rd Street, LLC by the United States District Court for the Eastern District of New York (Ann M. Donnelly, J.) Plaintiff filed suit to quiet title on a property subject to a mortgage held by U.S. Bank, arguing that the statute of limitations to foreclose on the mortgage had expired and that U.S. Bank's attempts to de-accelerate the mortgage were insufficient to extend the limitations period. The district court, relying on a statement in *Milone v. U.S. Bank, N.A.*, 164 A.D.3d 145 (2d Dep't 2018), held that U.S. Bank's purported de-acceleration was motivated only by a desire to avoid the expiration of the limitations period and was therefore insufficient to de-accelerate. While this appeal was pending, the New York Court of Appeals, in *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (2021), abrogated the proposition of *Milone* on which the district court relied. Because this intervening decision undermined the reasoning of the district court, the

judgment of the district court is VACATED and the case is REMANDED for further proceedings.

DANIELLE P. LIGHT (Rafi Hasbani, *on the brief*), Hasbani & Light, P.C., New York, NY, *for Plaintiff-Appellee.*

JONATHAN M. ROBBIN, J. Robbin Law, Armonk, NY, *for Defendant-Appellant.*

LEVAL, *Circuit Judge*:

In this case within the diversity jurisdiction of the federal courts,

Defendant U.S. Bank National Association ("U.S. Bank") appeals from the

grant of summary judgment in favor of Plaintiff 53rd Street, LLC ("53rd Street

LLC") by the United States District Court for the Eastern District of New York

(Ann M. Donnelly, J.). 53rd Street LLC brought the suit under Article 15 of the

New York Real Property Actions and Proceedings Law ("RPAPL") to

discharge a mortgage held by U.S. Bank on Plaintiff's property located at 2052

East 53rd Place, Brooklyn, New York. Relying on a statement in *Milone v. U.S.*

*Bank, N.A.*, 164 A.D.3d 145 (2d Dep't 2018), the district court ruled that,

because the bank's purported de-acceleration of the mortgage was motivated

only by intent to avoid the expiration of the period of limitations on

foreclosure, the bank did not succeed in deaccelerating the mortgage.

Accordingly, the district court ruled that the six-year limitations period had expired and discharged the mortgage.

After the entry of judgment (and the filing of U.S. Bank's initial brief in this appeal), the New York Court of Appeals, in *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (N.Y. Feb. 18, 2021) ("*Engel*"), abrogated the reasoning of *Milone* on which the district court relied. Because the ruling of New York's highest court undermines the basis for the district court's ruling, we vacate the judgment and remand for reconsideration and further proceedings in light of *Engel*.

## BACKGROUND

On January 5, 2006, Maria Pinto-Bedoya (hereinafter "Borrower") executed a note and mortgage for $428,000 in favor of Downey Savings and Loan Association, F.A. ("Downey S&L") for the property located at 2052 East 53rd Place. Borrower failed to make payments, and, on June 30, 2008, Downey S&L sued in New York Supreme Court, Kings County, to foreclose the mortgage. While the foreclosure action was pending, Downey S&L assigned the note and mortgage to U.S. Bank. In April 2013, the State court dismissed

the action for nonappearance. The parties do not contend that the dismissal affected the rights of the parties with respect to the mortgage.

In June of 2014, within six years of Downey S&L's suit to foreclose, U.S. Bank sent letters to Borrower stating that the loan, which had been "previously accelerated by [the] filing [of] a [foreclosure] lawsuit," was "de-accelerated" and "re-instituted as an installment loan." Joint App'x 269-70. A few weeks later, on July 15, 2014, U.S. Bank sent Borrower a 90-day pre-foreclosure notice, stating that the loan was more than 2,000 days in default and that Borrower could cure the default by making a payment of $261,306.46 by the next month. The letter added that failure to resolve the matter within 90 days could result in legal action. In a second letter, also sent on July 15, 2014, U.S. Bank informed Borrower that she was in breach of the mortgage and that failure to make the account current would result in re-acceleration of the mortgage. The next day, U.S. Bank sent Borrower the first in a series of monthly mortgage statements demanding a monthly payment of approximately $2,900, asserting that Borrower was delinquent on her loan, and directing her to pay the outstanding balance of the loan.

In December of 2016, a different mortgagee (who had issued Borrower a second mortgage on the same property) sued to foreclose the interests of Borrower. *See Courchevel 1850 LLC v. Pinto-Bedoya*, No. 16-CV-06716 (E.D.N.Y. filed Dec. 5, 2016). The court ordered the foreclosure and sale of the property, which was accordingly sold at auction in January 2018 to 53rd Street LLC, the plaintiff in the present action. A few days after 53rd Street LLC finalized its purchase, it filed this action in the district court "to cancel and discharge [U.S. Bank's mortgage] based on the premise that the statute of limitations to foreclose the [mortgage] expired [o]n June 30, 2014." Joint App'x 20.

The parties cross-moved for summary judgment, and, as recited above, the district court granted 53rd Street LLC's motion. It concluded that U.S. Bank's June 2014 communications purporting to de-accelerate the mortgage failed to accomplish that objective so that the statute of limitations on foreclosure had expired on June 30, 2014. Accordingly, the district court discharged the mortgage. U.S. Bank then brought this appeal.

## DISCUSSION

U.S. Bank contends the district court's judgment should be vacated because the subsequent decision of the New York Court of Appeals in *Engel*

abrogated the reasoning on which the district court based its decision. We agree.

   *(i) Standard of Review.* "We review a district court's grant of summary judgment de novo, resolving all ambiguities and drawing all reasonable factual inferences in favor of the party against whom summary judgment is sought." *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 93 (2d. Cir. 2020) (internal quotation marks and alterations omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact "exists and summary judgment is therefore improper where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Lucente v. County of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020) (internal quotation marks omitted).

   *(ii) De-acceleration of the loan.* Article 15 of New York's RPAPL codifies the common law action to quiet title. *See W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("New York has codified the common law action to quiet title and statutorily redefined the

necessary elements for a well-pleaded remaining cloud on title complaint.")

The statute provides, in relevant part:

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom; provided, however, that no such action shall be maintainable in any case where the mortgagee . . . or the successor of [the mortgagee] shall be in possession of the affected real property at the time of the commencement of the action.

N.Y. RPAPL § 1501(4) (omitting references to vendor's liens); *see also J & JT Holding Corp. v. Deutsche Bank Nat'l Tr. Co.*, 173 A.D.3d 704, 706 (2d Dep't 2019) (same). To discharge a mortgage pursuant to § 1501(4), a plaintiff must demonstrate: "1) that it has an estate or interest in the real property; 2) that all necessary parties to the action were joined; and 3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action." *Gustavia Home LLC v. Envtl. Control Bd.*, 2019 WL 4359549, at *5 (E.D.N.Y. Aug. 21, 2019). The parties do not dispute 53rd Street LLC's satisfaction of the first two prongs of this test,

narrowing the issue on appeal to the question whether the statute of

limitations on foreclosure had expired.[1]

In New York, an action to foreclose on a mortgage is subject to a six-

year statute of limitations. N.Y. CPLR § 213(4); *see Retemiah v. Bank of N.Y.*

*Mellon*, 195 A.D.3d 649, 650 (2d Dep't 2021). For a mortgage payable in

installments, "separate causes of action accrue[] for each installment that is

not paid, and the statute of limitations begins to run, on the date each

installment becomes due." *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982

(2d Dep't 2012). However, "[t]he law is well settled that, even if a mortgage is

payable in installments, once a mortgage debt is accelerated, the entire

---

[1] We reject U.S. Bank's argument that 53rd Street LLC lacked standing. While U.S. Bank neither challenges 53rd Street LLC's standing to bring an action under Article 15 nor its standing under Article III of the U.S. Constitution, it argues that 53rd Street LLC lacks standing to challenge the sufficiency of the de-acceleration notices. This argument is meritless. In support of its argument, U.S. Bank cites only inapposite case law about certain contract defenses which are personal to a mortgagor, and which have no bearing on whether, in the context of an Article 15 action properly filed by "any person having an estate or interest in the real property subject to" the mortgage, N.Y. RPAPL § 1501(4), we may consider the relevant facts bearing on whether the statute of limitations to foreclose on the mortgage expired. *Cf. 1081 Stanley Ave., LLC v. Bank of N.Y. Mellon Trust Co., N.A.*, 179 A.D.3d 984, 986-87 (2d Dep't 2020) (granting a property's subsequent purchaser summary judgment under RPAPL Article 15 where mortgagee failed to demonstrate that a de-acceleration letter was in fact sent to borrower).

amount is due and the Statute of Limitations begins to run on the entire debt." *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 180 A.D.3d 1002, 1003 (2d Dep't 2020) (internal quotation marks omitted).

Where acceleration of a mortgage debt upon default is made optional with the holder of the note and mortgage, the debt may be accelerated by the mortgagee's taking of "some affirmative action . . . evidencing the holder's election to take advantage of the accelerating provision." *Burke*, 94 A.D. at 982-83. "Commencement of a foreclosure action may be sufficient to put the borrower on notice that the option to accelerate the debt has been exercised." *Id.* at 983; *see also Engel*, 37 N.Y.3d at 22 ("[A]n election to accelerate must be made by an unequivocal overt act that discloses the noteholder's choice, such as the filing of a verified complaint seeking foreclosure and containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt." (internal quotation marks omitted)). The parties agree that Downey S&L's June 30, 2008, foreclosure action accelerated the mortgage, triggering the start of a six-year limitations period, which would expire on June 30, 2014.

After a mortgage is accelerated, the mortgagee can de-accelerate it, stopping the statute of limitations clock, provided the borrower has not "changed his position in reliance" on the acceleration, for example "by executing a new mortgage, applying an equitable estoppel analysis." *Engel*, 37 N.Y.3d at 28. "[A]bsent a provision in the operative agreements setting forth precisely what a noteholder must do to revoke an election to accelerate," the mortgagee can de-accelerate the loan by making an "affirmative act [of revocation] within six years of the election to accelerate." *Id.* at 28-29 (internal quotation marks omitted). "For example, an express statement in a forbearance agreement that the noteholder is revoking its prior acceleration and reinstating the borrower's right to pay in monthly installments has been deemed a[ sufficient] 'affirmative act' of de-acceleration." *Id.* at 29; *see also Zucker v. HSBC Bank, USA*, 2018 WL 2048880, at \*6 (E.D.N.Y. 2018) ("To stop the statute of limitations, the mortgagee . . . may revoke its decision to accelerate [the] debt by an 'affirmative act or revocation' taken with the six-year limitations period . . . .").

In *Milone*, on which the district court relied, the New York Supreme Court, Appellate Division observed that "[c]ourts must, of course, be mindful

of the circumstance where a bank may issue a de-acceleration letter as a pretext to avoid the onerous effect of an approaching statute of limitations and to defeat the property owner's right pursuant to RPAPL 1501 to cancel and discharge a mortgage and note." 164 A.D.3d. at 154. The district court understood the law of New York to be that, if a purported de-acceleration was motivated by desire to avoid expiration of the limitations period, it would fail to take effect.[2] The court found that U.S. Bank's de-acceleration was so motivated, held that the de-acceleration therefore did not reset the limitations period, and discharged the mortgage.

In 2021, however, the New York Court of Appeals in *Engel* expressly "reject[ed] the theory . . . that a lender should be barred from revoking acceleration if the motive of the revocation was to avoid the expiration of the statute of limitations on the accelerated debt." 37 N.Y.3d at 36 (citations omitted). Instead, a court must simply ask whether the mortgagee took an unambiguous affirmative act to de-accelerate the mortgage within the six-

---

[2] While this observation in *Milone* was merely an aside, other Appellate Division rulings, including *Wells Fargo Bank, N.A. v. Portu*, 179 A.D.3d 1204, 1206-07 (3d Dep't 2020) (which the district court also cited, *see* Special App'x 9), relied on the same reasoning in refusing to recognize purported de-acceleration by mortgagees.

year limitations period. *See id.* at 31 (emphasizing that an act "sufficiently affirmative to effectuate a revocation [of an acceleration]" should provide parties with "concrete contemporaneous guidance as to their current contractual obligations"); *see also U.S. Bank, N.A. v. Catalfamo*, 189 A.D.3d 1786, 1788 (3d Dep't 2020) ("Where, as here, the lender's affirmative act of revocation takes the form of a de-acceleration letter or notice, to be valid and enforceable, said notice must be clear and unambiguous.")

While 53rd Street LLC does not dispute that the highest court of New York repudiated *Milone*'s proposition that a lender's intent to avoid the expiration of the statute of limitations could invalidate an attempted de-acceleration, it interprets *Engel* to mean that a voluntary discontinuance of a foreclosure action is the *only* way to de-accelerate a previously accelerated mortgage. This argument is meritless. *Engel* indeed decided that a voluntary discontinuance of a foreclosure action was sufficient to de-accelerate a loan. *See* 37 N.Y.3d at 31 ("[W]hen a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—*i.e.*, the withdrawal of the complaint—constitutes a revocation of that acceleration."). But the *Engel* opinion did not suggest that such a voluntary

discontinuance is the only "affirmative act" that can successfully de-accelerate a mortgage. To the contrary, *Engel* expressly contemplated other "affirmative acts" that would suffice. *See id.* at 29 ("For example, an express statement in a forbearance agreement that the noteholder is revoking its prior acceleration and reinstating the borrower's right to pay in monthly installments has been deemed an 'affirmative act' of de-acceleration."). If 53rd Street LLC's interpretation of *Engel* were correct, a mortgagee whose foreclosure action was discontinued in any manner other than by voluntary withdrawal of its complaint—such as involuntary dismissal for some minor procedural issue— would have no way to de-accelerate the mortgage except to refile its foreclosure action for the sole purpose of then immediately withdrawing it. We see nothing in *Engel* that demands such wasteful formalism.

Because the district court's grant of summary judgment to 53rd Street LLC was based primarily on *Milone*'s now-abrogated assertion that a mortgagee's intent to avoid the expiration of the limitations period could invalidate a de-acceleration notice, we hereby vacate the judgment and remand for further consideration in light of *Engel*, including whether, regardless of U.S. Bank's intent in issuing the de-acceleration letters, U.S.

Bank clearly, unambiguously, and affirmatively communicated the de-acceleration of the loan within the limitations period.

*(iii) Certification of a State Law Question to the New York Court of Appeals.*

Finally, because this case involves disputed issues of New York State law, we have considered certifying to the New York Court of Appeals the question of the appropriate application of *Engel*. We asked the parties whether they were agreeable to certification. 53rd Street LLC favored certification, while U.S. Bank opposed it.

We may, in our discretion, certify a question of State law to a State's highest court provided that State law permits certification. 2d Cir. R. 27.2(a). Under New York law, we may certify "dispositive questions of law" provided that "determinative questions of New York law are involved" in the pending case and that "no controlling precedent of the [New York] Court of Appeals exists." N.Y. Ct. App. R. § 500.27(a). The New York Court of Appeals has discretion whether to accept the certification. *Id.* § 500.27(d).

There is no doubt that in certain contexts certification of questions of State law to a State's highest court can be helpful. When a case involving a question of State law is litigated in a federal court, certification is the only

path that ensures that the federal court's resolution of the question of State law comports with the understanding of the State's highest court. We have described several contexts in which certification can be particularly desirable, especially as an alternative to abstention, given that abstention can result in committing questions of federal law to State courts. *See Allstate Ins. Co. v. Serio*, 261 F.3d 143, 152 (2d Cir. 2001) (noting that certification, unlike abstention, allows federal courts to "refer the state law issues to state courts, while retaining the authority to rule on the federal constitutional questions that might come up, rather than ceding that responsibility, as an initial (and usually conclusive) matter, to the state courts"). We have also approved certification "where, unless there is certification, the state courts are substantially deprived of the opportunity to define state law." *Gutierrez v. Smith*, 702 F.3d 103, 116 (2d Cir. 2012). In some circumstances, furthermore, the opposing parties may concur in the desirability of certification because they may share a continuing interest in assurance that the court's resolution of the present dispute will be in accord with State law and will then serve as a basis for settlement of future disputes. We have also observed that, as a general matter, certification serves important values of federalism by

"affirm[ing] that it is the state's High Court that is entitled to have the final

say on any issue of state law." *City of Burlington v. Indem. Ins. Co. of N. Am.*,

346 F.3d 70, 74 (2d Cir. 2003).

At the same time, there are drawbacks to certification. First,

certification almost invariably results in substantial increase to the expenses

the parties incur and "inevitably delays the resolution of the case, sometimes

for well more than a year." *Valls v. Allstate Ins. Co.*, 919 F.3d 739, 742 (2d Cir.

2019) (per curiam). Furthermore, while certification can serve federalism

objectives, "significant federalism interests can also cut *against* certification."

*Id*. at 743. This is particularly true for cases in the diversity jurisdiction of the

federal courts. The Constitution expressly establishes a right for litigants in

cases "between Citizens of different States" to have their dispute resolved by

a federal court. U.S. Const. art. III, § 2, cl. 1. Federal statutes thus authorize the

institution of such an action in federal court, *see* 28 U.S.C. § 1332, and the

removal of such a case before a State court to the federal court by a defendant

who is not a citizen of the State where the action was brought, *see* 28 U.S.C.

§ 1441. When a case is litigated in the diversity jurisdiction of the federal

courts, certification of a determinative question to the State court substantially

undermines the diverse litigant's entitlement to the federal forum, because certification will often result in a State court determining the outcome of the case. *See Valls*, 919 F.3d at 743 ("In diversity cases, certification can effectively defeat a litigant's constitutionally endorsed entitlement to have its case adjudicated by a federal court rather than a state court, as certification will often effectively empower the state court to determine the outcome."); *see also* N.Y. Ct. App. R. § 500.27(a) (providing that New York Court of Appeals will answer certified questions only if they are "dispositive").

This diversity case presents no special concerns that favor certification. Cases involving mortgages are frequently litigated in the New York courts, and New York's highest court, as exhibited in *Engel* (which reviewed four Appellate Division opinions) does not lack opportunities to establish New York law in these matters. Certifying this case would, however, impose on the parties inevitable additional burdens of cost and delay, as well as undermine an objecting out-of-state litigant's entitlement to a federal forum. When both parties advocate certification, that may well represent a strong argument in favor, but that is not the case here. A federal court's decision on a question of State law, of course, in no way prevents the courts of the State,

especially the highest court, from reaching their own decision when the

question is eventually presented to them.  For the reasons reviewed above, we

therefore conclude that certification to the New York Court of Appeals is not

appropriate in this case.

**CONCLUSION**

For the foregoing reasons, the district court's grant of summary

judgment to 53rd Street LLC and order discharging the mortgage at issue are

VACATED. The case is REMANDED to the district court for further

proceedings in light of *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (N.Y. Feb.

18, 2021).