*Baring Industries, Inc. v. 3 BP Property Owner LLC et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of November, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> DENNY CHIN,
> MICHAEL H. PARK,
> *Circuit Judges*.

_____

BARING INDUSTRIES, INC.,

> *Plaintiff-Counter Defendant-Appellant*,

v.                                                            22-3123

3 BP PROPERTY OWNER LLC,

> *Defendant-Defendant-Cross Claimant-*
> *Counter Claimant-Cross Defendant-Appellee,*

WESTCHESTER FIRE INSURANCE COMPANY,

> *Defendant-Cross Claimant-*
> *Counter Claimant-Appellee,*

v.

DONE RIGHT HOOD & FIRE SAFETY INC.,

*Defendant-Cross Defendant-Cross Claimant,*

TRANSEL ELEVATOR & ELECTRIC INC., DBA TEI GROUP,
AA JEDSON COMPANY LLC, DADONG CATERING LLC,

      *Defendants.*

---

For Plaintiff-Appellant:                  GARY ROSEN, Rosen Law LLC, Great Neck, NY.

For Defendants-Appellees:          MITCHELL D. HADDAD (Katherine M. Lieb, *on the brief*), Sills Cummis & Gross P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Baring Industries, Inc. ("Baring") appeals from so much of the final judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*) as granted partial summary judgment in favor of Defendants-Appellees 3 BP Property Owner LLC ("3 BP") and Westchester Fire Insurance Company ("WFIC") (together, "Appellees") and granted 3 BP's attorneys' fees and costs. In the proceedings below, Appellees moved for partial summary judgment (1) dismissing Baring's claim seeking foreclosure on the underlying lien and judgment on the bond that discharged the lien, and (2) granting 3 BP's counterclaim for willful exaggeration of the lien. Appellees also sought a declaration that the lien was void, and 3 BP later filed a supplemental motion for attorneys' fees and costs in the amount of $516,406.15. Baring, for its part, moved for summary judgment (1) seeking foreclosure on its lien and for judgment on the bond that discharged the lien, and (2) dismissing 3 BP's counterclaims. On January 15, 2022, the district court denied Baring's motion for summary judgment and granted Appellees' motion

2

for partial summary judgment, holding that Baring willfully exaggerated the entire value of the lien. As such, the district court held that 3 BP was also entitled to a declaration that the lien was void. The district court subsequently granted 3 BP's supplemental motion for summary judgment for attorneys' fees and costs.

On appeal, Baring argues that the district court erroneously granted partial summary judgment in favor of Appellees and improperly awarded attorneys' fees and costs to 3 BP based on that ruling. Baring maintains on appeal—as it asserted in the proceedings below—that it is entitled to the full value of the lien. Baring, which describes itself as a "commercial food service equipment contractor," A-276 at 13:9–10, supplied and delivered kitchen equipment to DaDong Catering LLC ("DaDong"), a tenant in one of 3 BP's buildings, in connection with DaDong's restaurant construction project. After Baring supplied and delivered that equipment, DaDong allegedly failed to pay a contract balance of $320,356.94. As a result, Baring filed a mechanic's lien against 3 BP's property. Baring maintains that the labor, services, and equipment provided to DaDong were properly lienable as "permanent improvements" to the property. For the reasons set forth below, we disagree and affirm the district court's judgment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.    Willful Exaggeration of a Lien

We review a challenge to a district court's "grant of summary judgment *de novo*, resolving all ambiguities and drawing all reasonable inferences" in favor of the party against whom summary judgment was sought. *Woolf v. Strada*, 949 F.3d 89, 92–93 (2d Cir. 2020) (internal quotation marks and citation omitted). This standard is well established. A district court's grant of summary judgment should be affirmed "only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 93 (internal alteration, quotation

3

marks, and citation omitted). "A genuine dispute as to a material fact exists and summary judgment is therefore improper where the evidence is such that a reasonable jury could decide in the non-movant's favor." *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 77 (2d Cir. 2021) (internal quotation marks and citation omitted).

Under New York Lien Law, a contractor, subcontractor, or other person "who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof" can file a lien against the real property under certain circumstances. N.Y. Lien Law § 3. In considering claims arising out of a lien, New York state courts "[a]fford[] the Lien Law [a] liberal construction," *In re Old Post Rd. Assocs., LLC*, 112 N.Y.S.3d 254, 256 (App. Div. 2d Dep't 2019), to effectuate the Lien Law's purpose to "provide security for laborers and materialmen" and to "provide notice and a degree of certainty to subsequent purchasers," *In re Niagara Venture*, 566 N.E.2d 648, 652 (N.Y. 1990). However, "liens provide a limited remedy and are generally used to recover the fair value of that which, because of its use, is now physically or logically unrecoverable." *In re P.T. & L. Constr. Co., Inc.*, 399 N.Y.S.2d 712, 713 (App. Div. 3d Dep't 1977). Because liens impact the property owner's interest in real property, it is important to ensure that they are not abused.

The New York Lien Law also provides that if "a lienor has willfully exaggerated the amount for which he claims a lien as stated in his notice of lien, his lien shall be declared to be void and no recovery shall be had thereon." N.Y. Lien Law § 39. Where a lien is void on account of willful exaggeration, "the person filing such notice of lien shall be liable in damages to the owner or contractor." N.Y. Lien Law § 39-a. To prevail on a claim for willful exaggeration, the party asserting the claim must establish that "the lienor deliberately and intentionally exaggerated the lien amount." *Barden & Robeson Corp. v. Czyz*, 665 N.Y.S.2d 442, 443 (App.

Div. 3d Dep't 1997). Because this provision of the New York Lien Law is "penal in nature," it must be "strictly construed in favor of the person upon whom the penalty is sought to be imposed." *Pyramid Champlain Co. v. R.P. Brosseau & Co.*, 699 N.Y.S.2d 516, 520 (App. Div. 3d Dep't 1999).

At the start, we discern no error in the district court's conclusion that the undisputed facts establish as a matter of law that Baring's work did not result in any permanent improvements to 3 BP's property.[1] Baring supplied, warehoused, and delivered the following items, among others, to DaDong's premises: refrigerators, ovens, carts, tables, counters, ice machines, ranges, kettles, rice cookers, shelves, cabinets, hoods, fire suppression systems, microwave ovens, and fish tanks. These items were plainly not permanent improvements, nor did Baring's services in connection with their delivery and installation result in permanent improvements. To determine whether an item or service is a permanent improvement, New York state courts look to factors such as (1) the intent of the parties, *Monroe Sav. Bank v. First Nat'l Bank of Waterloo*, 377 N.Y.S.2d 827, 831–32 (App. Div. 4th Dep't 1976); (2) the ease of removing the items from the premises without damaging the property, *Sherwin v. Benevolent & Protective Ord. of Elks, Brooklyn Lodge No. 22*, 265 N.Y.S. 14, 16 (Sup. Ct. Kings Cnty. 1930); and (3) the way in which the items were installed, i.e., whether the installation involved "demolish[ing], erect[ing], or alter[ing] any structure," *Negvesky v. United Interior Res., Inc.*, 821 N.Y.S.2d 107, 108 (App. Div. 2d Dep't 2006), within the meaning of N.Y. Lien Law § 2(4). Here, each of these factors supports the district court's

---

[1] Because "sufficient precedents exist" for us to determine the propriety of the district court's grant of partial summary judgment, *McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997), and the issue of willful exaggeration is "frequently litigated in the New York courts," *53rd St., LLC*, 8 F.4th at 81, there is no need to certify questions to the New York Court of Appeals. Baring's insistence to the contrary is belied by the plethora of New York case law cited in Baring's own briefing, as well as that of Appellees.

conclusion that Baring failed to raise a material issue of fact on the question whether it made any permanent improvement to 3 BP's property.

First, Baring adduced no evidence that the parties intended for its services permanently to improve 3 BP's property. Instead, the record evidence supports the opposite conclusion. Thus, while the lease agreement between 3 BP and DaDong contains an allowance provision permitting DaDong to request reimbursement for its "actual construction" and so-called "soft" costs, for example architectural and engineering fees, costs for "portable equipment, furniture or other items of [DaDong's] personal property" are not reimbursable under the allowance provision. A-61, § 3.03. DaDong requested reimbursement for certain expenses, but not for those incurred in connection with Baring's services. A-48, ¶ 5. In addition, the lease required all "Leasehold Improvements" made by DaDong to remain on the property at the end of the lease. A-76, § 8.01. In contrast, items that were considered "Tenant's Property"—including DaDong's "business and trade fixtures, equipment, movable partitions, furniture, merchandise and other personal property within the Premises," A-87–88, Art. 14—were to be removed from the premises at the conclusion of the lease period, A-99–100, Art. 24. The record is undisputed that Baring's equipment was in fact removed from the premises at a court-approved bankruptcy auction, supporting the inference that the parties understood the equipment to be DaDong's property.

Under New York law, items or installations are considered trade fixtures—not permanent improvements—if they are "installed by a tenant during its lease term to carry on its business."[2]

---

[2] There is a presumption under New York law that "unless a contrary intention is expressed, where installations are made for the purposes of conducting the business for which premises are leased, such installations are not permanent annexations to the freehold, but are made for the sole use and enjoyment of the tenant during the term of his lease." *Shell Oil Co. v. Capparelli*, 648 F. Supp. 1052, 1055 (S.D.N.Y. 1986) (internal alterations, quotation marks, and citation omitted). Baring has provided no evidence to rebut that presumption here.

*E. Side Car Wash, Inc. v. K.R.K. Capitol, Inc.*, 476 N.Y.S.2d 837, 840 (App. Div. 1st Dep't 1984); *see also Shell Oil Co.*, 648 F. Supp. at 1055 (storage tanks "installed by Shell, as tenant, during the term of the lease" and that were "installed solely for the purpose of furthering Shell's business" were trade fixtures). In addition, items that the "lessee has supplied at its own expense and has the right under the lease to remove" generally constitute trade fixtures. *E. Side Car Wash, Inc.*, 476 N.Y.S.2d at 840. Here, the record is undisputed that the equipment was installed by Baring, on behalf of DaDong, during the term of DaDong's lease with 3 BP, for the sole purpose of furthering DaDong's restaurant business. DaDong was not reimbursed for the costs of procuring and installing the equipment, and had the right to remove the equipment from the premises at the end of the lease. In such circumstances, the district court did not err in concluding that the installation of the kitchen equipment was a "usual temporary change[] made by a tenant to suit his views, to be in turn torn out to give way to like changes at the hands of his successor." *Jewett Refrigerator Co. v. Lawless*, 198 N.Y.S. 617, 623 (Sup. Ct. Monroe Cnty. 1923).

Next, the record is undisputed that the equipment could be removed—and was removed—without harming the property. For purposes of this factor, the equipment can be divided into four categories: (1) items that had built-in wheels; (2) items that were otherwise freestanding and could be removed; (3) items that could be picked up, even if they were not freestanding; and (4) items that could be detached from the walls. With respect to the last category, Baring's Vice President and Project Manager, James Turner, testified in his deposition that items attached to the walls could be removed without damaging the property. The removability of Baring's equipment distinguishes this case from those cited by Baring in which the items could not be "removed without harm to the realty," *see, e.g.*, *In re Campagna Dev. Corp.*, 347 N.Y.S.2d 253, 254 (Sup. Ct. Suffolk Cnty. 1973).

Finally, no evidence suggests that Baring altered any structure whatsoever in the course of installing the equipment. Baring's President, Michael Fitzgibbon, testified in his deposition that Baring did not make physical alterations to the property during the construction project. Specifically, Fitzgibbon disclaimed that Baring or any of its employees made holes in walls or in floors, performed utility connections, demolished walls or floors, or performed roof or floor penetrations. Because Baring did not "demolish, erect, or alter any structure," *Negvesky*, 821 N.Y.S.2d at 108, this factor suggests that Baring made no permanent improvement.

In such circumstances, the district court correctly granted partial summary judgment on 3 BP's willful exaggeration counterclaim. While "the issue of willful or fraudulent exaggeration is one that [] ordinarily must be determined at the trial of the foreclosure action," *Aaron v. Great Bay Contracting, Inc.*, 736 N.Y.S.2d 359, 361 (App. Div. 1st Dep't 2002), an exception exists where there is "conclusive" evidence of willful or deliberate exaggeration, *Casella Constr. Corp. v. 322 E. 93rd St. LLC*, 181 N.Y.S.3d 20, 21–22 (App. Div. 1st Dep't 2022) (internal quotation marks and citation omitted). Such is the case here. Fitzgibbon testified that he visited DaDong's premises only twice, that he never saw DaDong's change orders or Baring's requisitions for payment, and that he was unaware of what constituted the $320,356.94 lien amount and did not even attempt to verify the accuracy of the lien. For her part, Jennifer Hendrick, his associate, testified in her deposition that she was not involved in Baring's sale or delivery of equipment to DaDong, had never been on DaDong's property, and had no personal knowledge of the services Baring performed for DaDong. Hendrick knew that a lien can be filed in New York only in connection with a permanent improvement, yet she filed the lien without verifying that Baring met this requirement. Under these circumstances—and in light of the plainly non-permanent character of the trade fixtures at issue—the district court did not err in determining that the record

"conclusively" establishes that the full amount of the lien was willfully exaggerated, *see Inter Metal Fabricators, Inc. v. HRH Constr. LLC*, 942 N.Y.S.2d 334, 335 (App. Div. 1st Dep't 2012), and that Baring failed to adduce evidence suggesting to the contrary.[3]

**II.    Attorneys' Fees and Costs**

We review a district court's award of attorneys' fees and costs for abuse of discretion. *See Matthew Bender & Co., Inc. v. W. Publ'g Co.*, 240 F.3d 116, 120–21 (2d Cir. 2001). "The standard of review of an award of attorney's fees is highly deferential to the district court." *Id.* at 121 (internal quotation marks and citation omitted). Nevertheless, an award of attorneys' fees "must be reasonable" given "the circumstances of the particular case," and the district court "necessarily abuses its discretion if its conclusions are based on an erroneous determination of law." *Id.* (internal quotation marks and citations omitted).

None of Baring's objections to the district court's award of attorneys' fees and costs has merit. At the start, Baring points to no facts suggesting that the award of attorneys' fees encompassed charges from matters unrelated to this litigation. Nor has Baring adequately demonstrated the unreasonableness of the hourly rates charged by 3 BP's attorneys. Baring did not object to those hourly rates in the proceedings below, but even assuming *arguendo* that this argument is properly before us now, it is without merit. The hourly rates of 3 BP's attorneys— which were discounted to a range of $590.75 to $658.75 for a partner and $446.25 to $505.75 for an "of counsel" attorney—are reasonable for experienced litigators in the Southern District. *See,*

---

[3] Baring also argues that the district court voided the lien on the ground that 3 BP never consented to Baring's work and that, as a result, the lien is void and cannot be the basis for 3 BP's recovery. Even if this characterization of the district court's holding were accurate, however, Baring did not argue before the district court that a lack of consent precluded 3 BP from recovering on its willful exaggeration counterclaim. Baring has therefore waived this argument on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below.").

9

*e.g.*, *Inter-Am. Dev. Bank v. Venti S.A.*, No. 15 Civ. 4063, 2016 WL 642381, at \*7 (S.D.N.Y. Feb. 17, 2016) (approving hourly rates ranging from $380 to $795 for partners with experience ranging from 10 to 40 years); *KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236, 2015 WL 2129703, at \*2 (S.D.N.Y. May 6, 2015) (approving hourly rates of $675 for a partner with 30 years' experience, $437.00 for an associate with 7 years' experience, and $255.00 for an associate with 3 years' experience).    Finally, the aggregate fee award, which represents the entirety of 3 BP's reasonable attorneys' fees, is proportional to the full amount of willful exaggeration here.    *See Pelc v. Berg*, 893 N.Y.S.2d 404, 406 (App. Div. 4th Dep't 2009) (finding that the award of attorneys' fees was proper because "the total amount of the mechanic's lien was the result of willful exaggeration").

\*        \*        \*

We have considered Baring's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.    3 BP's motion for leave to file documents on an *ex parte*, *in camera* basis is **DENIED** as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk